## STATE v. MARTIN BOST.

(Filed 13 May, 1925.)

1. **Appeal and Error—Settlement of Case—Notice to Parties—Statutes.**
    Unless the case on appeal to the Supreme Court has been settled by agreement of counsel, C. S., 644 gives the parties the right to be notified by the judge of the place and time he will settle the case, and where the appellant has asked the judge to fix the time and place for the purpose, it is error for the trial judge to disregard his right to be present.

2. **Appeal and Error—Jurors—Challenge—Prejudice—Recordari.**
    Where the appellant makes a motion in the Supreme Court for a recordari to show that he had been prejudiced by being wrongfully com-

pelled to accept a juror, he must not only show that his peremptory challenge had been exhausted, but that the juror had been retained subject to his exception.

**3. Homicide—Murder — Self-defense — Instructions—Provocation—Quitting the Combat—Appeal and Error.**

In an action for a homicide, if there was evidence tending to show that the prisoner after provoking a quarrel with the deceased had left him and had gone off to attend to his business, without evidence of his having provoked the quarrel afterwards, an instruction to the effect that the prisoner may not successfully show justification as a defense under the circumstances, is reversible error.

APPEAL by defendant from *Stack, J.,* at October Term, 1924, of CABARRUS.

Criminal prosecution, tried upon an indictment charging the defendant with murder.

When the case was called, the solicitor for the State announced that he would not insist upon a verdict of murder in the first degree, but that he would ask for a verdict of murder in the second or manslaughter as the degree of guilt might be disclosed by the evidence adduced on the hearing.

The defendant, thereupon, admitted the intentional killing of the deceased with a deadly weapon, and pleaded that the same was done in the exercise of his own proper self-defense. Under this admission, the defendant was given the opening and conclusion, both in the introduction of evidence and in the order of argument.

There was evidence on behalf of the defendant tending to show that Jesse Vanderburg, in company with two of his sons and a man by the name of Aiken, came to the home of the defendant on Monday night, directly after dark, 15 September, 1924. They had a 3-gallon jug of wine. Aiken and the two boys left about midnight, but Jesse Vanderburg, who had evidently been drinking, refused to go away with them. The defendant told him he might sleep in one of his beds, but he soon went out, saying he was going home. He was found, however, the next morning lying on the bed which the defendant had offered him the night before. His hat and jug were on the porch and he was still wearing his clothes.

Vanderburg was about the defendant's house all day Tuesday, it being a rainy day, and he talked of going home several times. He even asked the defendant to let him have a mule to ride home. This the defendant consented to do, but he failed to get away. Finally, as night came on, the defendant went out to feed his stock and to milk his cow. On returning to the house, according to the defendant's testimony, the following took place: "I went through the cook room and in the dining room with my milk and I heard him kicking at the

screen door. There was a well at the back end of the kitchen. When I went in the dining room, I went in the door next to the well and through. I never noticed whether the screen in the dining room was fastened. I went to shut the door. He kicked a hole a dog could go through in the screen, and when he saw me he said he had a gun in his pocket and was going to shoot me, and when I pushed the door shut he went off along on the porch; I could see him passing the window and I was coming on through shutting the other door, and I heard him out there cursing me, and I thought I'd get out of the house, and just as I walked to the door he was at the steps, had the axe up this way (indicating), and said he was going to come in there and kill me. If I'd stepped out he was close enough to reach me. If I could have got to the door sooner I could have got away, and I just had to shoot him or be killed. I shot twice with a pistol."

The deceased was a vigorous, active man, weighing about 200 pounds, while the defendant is 63 years of age and weighs about 150 pounds.

It was the theory of the State that the deceased had been shot in the woods and probably carried to the house by the defendant, but there was little more than conjecture to support this theory. Two of the State's witnesses testified that they heard three shots; and there was evidence tending to show that the axe was found some distance away from the porch. Vanderburg died the following day, after having made a statement to his wife about the shooting. In giving his dying declaration, she said: "I asked him what they fell out about. He said: 'We didn't have any fuss at all'; said he was at the woods, started home; 'I don't know what made him shoot me.' He didn't say he shot him at the woods."

From a verdict finding the defendant guilty of manslaughter, and judgment pronounced thereon, he appeals, assigning errors.

*Attorney-General Brummitt and Assistant Attorney-General Nash for the State.*

*J. L. Crowell, Hartsell & Hartsell, H. S. Williams and J. Lee Crowell, Jr., for defendant.*

STACY, C. J., after stating the case: The defendant, *in limine,* suggested a diminution of the record and lodged a motion for certiorari, or that the case be remanded for settlement in agreement with the provisions of the statute. As a basis for this motion, it is alleged that the defendant's statement of case on appeal, together with the solicitor's objection thereto, was sent from Concord, N. C., to the judge at his home in Monroe, N. C., on 20 February, 1925, with the request that he fix a time and place for settling the case before him. On the following

day the judge settled the case and returned the papers to the clerk without notice to counsel or opportunity for them to appear before him when he settled the case. Counsel for defendant assert that they expected to appear before the judge when the case was settled, and that one of their exceptions was modified or changed to the prejudice of the defendant.

When the case on appeal is not settled by agreement of counsel, and the papers are sent to the judge with a request that he fix a time and place for settling same before him, the statute, C. S., 644, provides: "The judge shall forthwith notify the attorneys of the parties to appear before him for that purpose at a certain time and place, within the judicial district, which time shall not be more than twenty days from the receipt of the request. At the time and place stated, the judge shall settle and sign the case, and deliver a copy to the attorney of each party, or, if· the attorneys are not present, file a copy in the office of the clerk of the court. If the judge has left the district before the notice of disagreement, he may settle the case without returning to the district."

The defendant's first exception as it appears in the statement of case on appeal is as follows: "After the State had passed the jury, and after the State had exhausted its peremptory challenges, and after the jury had been tendered to the defendant, and before the jury was empaneled, the State received information that the juror, J. W. Driskill, had committed a homicide himself, and thereupon stated to the court that this information had ·been obtained, and the State asked the court in its discretion to be permitted to challenge the juror, Driskill, on the ground that he had committed a homicide himself. The defendant objected. Upon being questioned, the juror, J. W. Driskill, admitted that he had killed a man and was put in jail for it, but that the grand jury found no bill against him. The court remarked at the time that it didn't want any one on the jury that had ever killed any one, and to this remark of the court the defendant excepted. The court in its discretion allowed the challenge and stood the juror aside. To all of which the defendant in apt time excepted."

It is averred that at the time the juror Driskill was excused by the court, the defendant, as well as the State, had exhausted his peremptory challenges, and that this circumstance was inadvertently omitted from the case on appeal, which the defendant thinks is material to his exception, and that the judge would insert it if given an opportunity to do so.

There would be merit in the defendant's motion if it appeared, which it does not, that he had undertaken to challenge another juror after the juror Driskill had been stood aside. *S. v. Fuller,* 114 N. C., 886. It is now the settled practice in this jurisdiction that no ruling relating to

the qualification of jurors and growing out of challenges to the polls will be reviewed on appeal, unless the appellant has exhausted his peremptory challenges and then undertakes to challenge another juror. *Oliphant v. R. R.,* 171 N. C., 303. His right is not to select, but to reject, jurors; and if the jury as drawn be fair and impartial, the complaining party would be entitled to no more on a new trial, and this he has already had on the first trial. · *S. v. Levy,* 187 N. C., p. 587.

There is on the record, however, an exception which we think must be held for error. In dealing with the defendant's plea of self-defense, the trial court instructed the jury as follows: "Before he can set up that plea, gentlemen of the jury, he must satisfy you that he did not provoke the difficulty, because when a man brings on a difficulty and he is forced to kill he cannot set up the plea of self-defense, because he provoked the trouble. Another principle is, that if the defendant, in this case, entered into the difficulty at the beginning willingly, then he can't set up the plea of self-defense." This instruction was repeated in substance several times during the charge.

There is no substantial evidence on the record tending to show that the defendant provoked the difficulty or entered into it willingly, but if his Honor deemed it wise to emphasize this principle of law, we think, in view of the defendant's evidence, he should have gone further and told the jury that the right of self-defense may be restored to one who has provoked a difficulty, or entered into it willingly, by "quitting the combat" in good faith and giving his adversary notice of such action on his part. *S. v. Kennedy,* 169 N. C., 326; *S. v. Pollard,* 168 N. C., 116. We assume this was an inadvertence on the part of the careful judge who tried the case, but we have repeatedly held that such omission is prejudicial error. *Jarrett v. Trunk Co.,* 144 N. C., 299.

If the defendant had provoked the deceased to anger or had brought on the difficulty at an earlier hour in the day, it would seem that when he went to feed his stock and milk his cow he had then abandoned the dispute or combat. At any rate, we think, the above instruction, while probably not reversible under a given state of facts, must be held for error on the present record, even in the absence of any special request. *Butler v. Mfg. Co.,* 182 N. C., p. 553; *Lea v. Utilities Co.,* 176 N. C., p. 514. "When the judge assumes to charge and correctly charges the law upon one phase of the evidence, the charge is incomplete unless it embraces the law as applicable to the respective contentions of each party, and such failure is reversible error." *Brown, J.,* in *Real Estate Co. v. Moser,* 175 N. C., 259.

For error in the charge, as indicated, there must be another trial, and it is so ordered.

New trial.