MEBANE GRADED SCHOOL DISTRICT AND THE TOWN OF MEBANE v. COUNTY OF ALAMANCE AND THE BOARD OF EDUCATION OF ALAMANCE COUNTY; COUNTY OF ORANGE AND THE BOARD OF EDUCATION OF ORANGE COUNTY.

(Filed 24 February, 1937.)

1. **Mandamus § 1—**

   *Mandamus* will lie only to compel the performance of a clear legal duty at the instance of a party having a legal right to demand its performance.

2. **Mandamus § 2b: Counties § 10—Mandamus held to lie under facts of this case to compel county to assume indebtedness incurred by special charter district to provide constitutional school term.**

   The evidence disclosed that a special charter school district, comprising territory lying in two counties, voted and issued bonds for a school building and equipment, which were necessary to the maintenance of the constitutional school term in the district, that appellant county had assumed the indebtedness of all of its school districts with the exception of that of plaintiff district and three others, and that it levied a special tax in plaintiff district to pay debt service for the district's indebtedness. *Held:* Under provision of the State Constitution, Art. IX, it was the duty of the county as an administrative agency of the State to provide the constitutional school term in the district, and plaintiff district is entitled to *mandamus* to compel the county to assume the indebtedness incurred by the district for this purpose, and the defense that the duty to assume the debt was discretionary and that *mandamus* does not lie to compel the performance of a discretionary duty is untenable, it being mandatory on the county, having assumed the indebtedness of some of its districts, to

assume the indebtedness of all its districts, and the courts having juris-diction in the matter to hear evidence and determine whether the indebted-ness was incurred by the district to provide the constitutional school term.

**3. Evidence § 47—**

Experts in the administration of public schools may testify from their own knowledge as to whether the expenditure of funds by a school district was necessary for the maintenance of the constitutional school term in the district.

**4. Appeal and Error § 42—**

The exclusion of opinion evidence will not be held for error when the proffered testimony is vague, uncertain, and immaterial, and has little or no probative force or value on the issues.

**5. Evidence § 38—**

Foundation for the admission of secondary evidence *held* sufficiently laid under authority of *Chair Co. v. Crawford,* 193 N. C., 531.

**6. Trial § 29a—Form and. sufficiency of charge in general.**

Under C. S., 564, it is the duty of the court to charge in a plain and correct manner the evidence in the case and explain the law arising thereon, and he is required to give a correct charge on these substantive features without tender of prayers for instructions, but a party desiring a fuller explanation on some subordinate feature of the case or some particular phase of the testimony should aptly tender request therefor, and the charge in this case *is held* not to impinge the statute.

**7. Appeal and Error § 39—**

A judgment will not be disturbed for error which is not prejudicial or material.

APPEAL by defendants from *Williams, J.,* and a jury, at August Civil Term, 1936, of ALAMANCE. No error.

From a careful review of the record (containing some 268 pages) we think plaintiffs' statement of facts substantially correct:

"The Mebane District was created under authority of chapter 165, Private Laws of 1903, and operated under the provisions of that act and. as amended by chapter 81, Private Laws of 1920, until the enactment of the Griffin Act by the General Assembly of 1933.

"The Act of 1903 described the territory which constitutes the Mebane District, said district comprising territory lying in both Alamance and Orange Counties, and all the territory within the corporate limits of the town of Mebane. The act provided for a vote of the qualified voters of the district, and if. a majority voted 'for graded schools' it should there-after be the duty of the board of commissioners of the counties of Orange and Alamance to levy, annually, a special tax of not less than 30c nor more than 33⅓c on the $100.00 valuation of the taxable prop-erty of the district, and upon each poll not less than 90c nor more than $1.00; it provided further, that all funds derived from such district

taxes and received for school purposes from the State and from the counties were to be used for the benefit of the graded schools of that district.

"The act further conferred upon the board of trustees, which was self-perpetuating, 'the power to establish and maintain such schools as they shall deem necessary.' Chapter 81 of the Private Laws of 1920 amended the original act by providing for the issuance of bonds by said school district in an amount not to exceed $75,000, upon a majority vote of the qualified voters of the district.   .   .   .

"The school site in the Mebane District was donated to the district and the original school building was constructed by Mr. Stephen White, a citizen of the district. The population grew very rapidly, and by 1919 the school attendance had increased so much that it became necessary to provide additional school room, and the trustees built a four-room frame structure for temporary use and also used three Sunday school rooms in the Baptist church, which was located on an adjoining lot. About 1920, an effort was made to raise some money to build a new building by obtaining $40,000 or $50,000 from the State Department of Education and by the issuance of bonds of the district in the amount of $25,000.

"These plans did not materialize, and the trustees then considered the construction of a new building, but finally, in the interest of economy, decided to retain the old building and to build an addition to it at a cost of $75,000. To have constructed an entirely new building would have cost $100,000. This decision was reached prior to 1922.

"At that time, in order to accommodate the school children of the district, use was being made of the four regular class rooms in the old building, which had been built by Mr. White, without cost to the district or to the county, and the auditorium on the second floor had been divided into four rooms by canvassed partitions; the four rooms in the temporary frame structure were in use and three rooms in the Baptist church. At that time the school buildings were not equipped with water and sewerage, and drinking water was obtained from a neighboring lot. The buildings were heated by stoves and the old building was 'a dangerous fire trap.'

"Pursuant to the authority conferred by chapter 81 of the Private Laws of 1920, a bond election was held in the Mebane District with the result that the issuance of bonds was authorized. Mr. Chester Masslich, a New York bond attorney, was employed to supervise the election and the issuance of the bonds. A competent architect was employed to prepare the plans, and when bids were received the lowest bids ran in excess of $80,000. Later, the board of trustees, by making certain changes in the plans, was able to get the lowest bidder to build the building within

the amount of the bond issue, consisting of eleven class rooms on the first and second floors with an auditorium and an unfinished basement, the building being of standard brick construction. The new building was an addition to the old building, and in order to maintain the first floor level of the old building it was possible to provide space in the basement of the new building for five class rooms, but there was not money available to finish the basement rooms.

"At that time the community was growing very rapidly, and it was believed that the additional space in the basement would be needed in the near future. All of the proceeds from the sale of the bonds were used in the construction of the building, but there was not enough money to pay for the building and its equipment. The auditorium curtain and stage setting were bought with money raised by the Parent-Teacher Association and donated to the school. Approximately $2,000 in addition to the proceeds of the bonds was raised from subscriptions and entertainment. No additional land was purchased. The trustees borrowed, personally, about $4,000 from a local bank to build a teacherage.

"The building was extremely plain with no ornaments whatsoever and all of the space utilized. For the school year 1922-23 the total enrollment in the school was 557; in 1923-24, 576; in 1925-26, 570; from 1926 to 1933 the enrollment was approximately 550, and for the year 1933-34, was 602; and for the year 1935-36, 697. Before the new building was erected no children were admitted to the schools who lived outside of the district, but after it was erected a few were admitted and these were charged tuition.

"The contract price for the building was $72,000, including the heating plant, but excluding all equipment, the lighting, and the excavation. The auditorium in the new building seats 750 people on the main floor and 280 in the balcony. It was frequently used to its capacity.

"The bonds were sold for a small premium—approximately $1,000. Thereafter, each year the county commissioners of Alamance and Orange Counties levied and are still levying a special tax of 12c on the $100 valuation to meet the debt service on the bond issue. The county of Alamance collected these taxes and the checks or vouchers stated the purpose of the levy by reciting, 'To apply on bond issue $75,000 dated February 1, 1922.' Of the total bond issue, $57,000 is still outstanding—$2,000 of this amount being in default with interest due from February 1, 1934, and the interest is due on the remaining $55,000 from February 1, 1936 (the findings of fact made by the court).

"Beginning with the year 1933, the special tax in the Mebane District for school maintenance was abandoned, as required by the Griffin Act, but the counties of Alamance and Orange continued to levy the 12c tax for debt service. The Mebane District received no financial contribu-

tion from the counties of Alamance or Orange for debt service purposes prior to 1927, but beginning with 1927 and continuing to the present time, it has received its per capita allotment of the county-wide tax levied for school debt service. The county assumed all of the debts of the local school districts of Alamance County, whether they were represented by bonds or by loans made by the State Literary Fund or by loans made by the State Building Fund, and in each annual audit of the county made for the year 1932 and continuing through 1935, all of said indebtedness was shown as county indebtedness. Prior to 1932, there were a number of local tax districts in Alamance County in which a local tax was levied, but beginning with the fiscal year July 1, 1933, all these local taxes were abandoned except in the special districts of Mebane and Burlington. Beginning with the year 1933, the records of the county show that all the debt service requirements of all the local tax districts in Alamance County, other than the four charter districts of Mebane, Burlington, Haw River, and Graham, have been paid out of the county's general school fund, and that the special charter districts have, since said time, received the per capita allotment of the county-wide levy for debt service.

"The county commissioners prepared a refunding plan in 1933, in which the total indebtedness of the county and the indebtedness of each incorporated town in the county is shown, and in which it was stated that the school district indebtedness assumed by the county amounted to $247,650. In 1932, the total special tax levy in the Mebane District was 41c, and in that year there were 17 other special tax districts in which local levies were made. For the year 1932, the county-wide debt service tax rate was .172. The following year, 1933 (the first year under the Griffin Act), the county-wide school debt service tax was .205, and in that year no levy was made in any of the other 17 special school tax districts except Burlington and Mebane, and all debt service requirements of all other districts of the county were paid out of the county-wide debt service levy; and that practice has been followed thereafter.

"On July 3, 1933, the county board of education of Alamance County, by resolution regularly adopted and recorded in its minutes, endorsed and transmitted to the board of county commissioners its approval of the proposal of the board of trustees of the Mebane School District to surrender to the county all of the assets of the district upon condition that the county assume the outstanding bonded indebtedness. This resolution listed the current assets at $15,717.86, current liabilities at $10,929.66, capital assets at $120,413.68, and capital liabilities at $62,-194.72. It was stipulated by counsel that the records of the proceedings of the board of county commissioners of Alamance County, since July 3, 1933, do not show any action, having been taken on the foregoing resolution of the county board of education.

"Evidence showing that the building, site, and equipment of the Mebane District were necessary for the conduct of the constitutional public school term—

"Four of the six members of the board of trustees of the Mebane District are still living, and each of them testified that they had personal knowledge of the school conditions prevailing in the Mebane District at the time of the expenditure from the proceeds of the $75,000 bond issue; that they knew the number of pupils enrolled, the number of teachers employed, the space available for school purposes, the condition of the building, the growth of the community, and other relevant facts; and each testified that in his opinion the building, equipment, and site were reasonably necessary for the conduct of the constitutional school term in that district. In addition to these witnesses, W. F. Credle, qualified expert, who has been employed by the State Department of Public Instruction since July 1, 1921; Mr. J. Henry Highsmith, director of educational inspection service of the State Department of Public Instruction, and also an expert, and Dr. A. M. Proctor, a member of the faculty of Duke University, who was for six years a director of the division of county school organization of the State Department of Education, and also an expert, all testified of their personal knowledge of the Mebane District building, equipment, and site, and that in their opinion all were necessary at the time acquired and are still necessary for the conduct of the constitutional school term for the children of that district.

"The jury found, in answer to the issues submitted, that the building, site, and equipment, at the time acquired, were essential and necessary for the conduct of the constitutional school term, and that they are now reasonably essential and necessary. Neither Orange County nor Alamance County have ever provided in said Mebane District any school facilities whatsoever."

The judgment of the court below was as follows: "This cause coming on to be heard at this term before the undersigned judge presiding, and the defendants having demanded a trial of the issues of fact arising upon the pleadings by a jury, a jury was duly impaneled and answered the issues as follows:

" '1. Have the counties of Orange and Alamance or either of them provided necessary school buildings and equipment for the conduct of the constitutional six months school term for the children of the Mebane Graded School District? Ans.: "No."

" '2. Did the plaintiff Mebane Special Charter or Graded School District issue and sell $75,000 of bonds for the purpose of providing sites, buildings, and equipment for the schools conducted and operated within said district, as alleged in the complaint? Ans.: "Yes."

SCHOOL DISTRICT *v.* ALAMANCE COUNTY.

" '3. If so, was the debt of the Mebane Special Charter or Graded School District represented by said bonds lawfully incurred at the time of their issuance? Ans.: "Yes."

" '4. Were the proceeds of said bonds used by the said plaintiff for the purpose of providing sites, buildings, and equipment for the schools conducted and operated within its district, as alleged in the complaint? Ans.: "Yes."

" '5. What amount of the said bonds and interest thereon so issued and used by said plaintiff are still outstanding and unpaid? Ans.: "$57,000."

" '6. Are the buildings, equipment, and school facilities acquired by the Mebane Graded or Special Charter School District now being used for the conduct of the constitutional six months school term in said district? Ans.: "Yes."

" '7. Were the sites, buildings, and equipment acquired, constructed, and used by the plaintiff Mebane Special Charter or Graded School District reasonably essential and necessary for the conduct and operation of the six months school term at the time the said sites, buildings, and equipment were acquired and constructed, as contemplated by Article IX, section 3, of the Constitution for the State of North Carolina, and the statutes enacted pursuant thereto? Ans.: "Yes."

" '8. Are the school buildings, school sites, and facilities of the Mebane Graded or Special Charter School District reasonably necessary for the conduct of the constitutional six months school term for said district? Ans.: "Yes."

" '9. Did the defendants, in the year 1933 or theretofore, assume the payment of bonds and interest thereon issued and sold by other local taxing school districts in Alamance County, as alleged in the complaint? Ans.: "Yes."

" '10. Are the plaintiffs estopped by their course of conduct and dealings from asserting their claim and demand that the defendants assume the payment of their bonded indebtedness, as alleged in the answer? Ans.: "No."

" '11. Did the plaintiffs waive their right by their course of conduct and dealings to demand that the defendants assume the payment of its bonded indebtedness, as alleged in the answer? Ans.: "No."

" '12. Is the plaintiffs' right to maintain this action barred by the statutes of limitations in not filing their claims within two years after its maturity, as provided in section 442 of Consolidated Statutes, and not bringing their action within 3 years after their right of action accrued, as provided in section 441 of Consolidated Statutes and other statutes of limitations, as prescribed in the laws of the State of North Carolina, as alleged in the answer? Ans.: "No." '

"Independently of the verdict rendered by the jury, the court, upon careful consideration of the evidence, finds the following facts:

"1. That the facts found by the jury, as embraced in the issues submitted to the jury, are found to be true and correct.

"2. That the bonded indebtedness of the Mebane Graded School District or Special Charter District in the principal sum of $75,000, with interest as hereinbefore stated, represents the unpaid balance of the original bonded indebtedness in the principal sum of $75,000, represented by seventy-five bonds in the denomination of $1,000 each, and due and payable as follows: $2,000 annually 1 February, 1925, to 1 February, 1938, inclusive; $3,000 annually 1 February, 1929, to 1 February, 1947, inclusive; $4,000 annually 1 February, 1948, to 1 February, 1952, inclusive.

"3. That both the county board of education and the county commissioners of Alamance County have, since 1922, known that the Mebane Graded School or Special Charter School District had issued said bonds in the principal sum of $75,000, and the county commissioners have annually levied a tax in said school district for the payment of debt service on account of said bonds, and for other school expenses. That beginning with the year 1933 the county commissioners of Alamance County have levied a tax rate of 12c in said special school district for the sole and exclusive purpose of paying the debt service on said bonded indebtedness. That the board of education of Alamance County has received annually an audit of the financial affairs of said Mebane Graded or Special Charter School District, and has also received a budget from said district, which audits and budgets have disclosed the debt service requirements of said school district on account of said indebtedness, and the county of Alamance, in remitting collections of taxes levied in said school district, has recognized the existence of said bonded indebtedness by stating on the vouchers, delivered in payment of said taxes, that certain of said taxes were collected on account of said bonded indebtedness.

"4. That the defendants county of Orange and the board of education of Orange County were properly served with summons in this action, and with copy of the complaint. That neither of said defendants have filed answer or other pleadings.

"Upon the verdict of the jury and the additional findings of fact made by the court, the court being of the opinion that the plaintiffs are entitled to the writ of *mandamus* requiring the defendants Alamance County and Orange County to assume and pay the bonded indebtedness of the Mebane Graded School or Special Charter District, as prayed in the complaint.

"It is now therefore ordered, adjudged, and decreed that the counties of Alamance and Orange shall forthwith assume and pay the bonded

indebtedness of the Mebane Graded School or Special Charter District in the principal sum not exceeding $57,000, with interest on $55,000 from 1 February, 1936, and on $2,000 from 1 February, 1934, as and when the same matures and becomes payable.

"It is further ordered, adjudged, and decreed that the counties of Alamance and Orange shall not make any levy or collection of taxes exclusively in said Mebane Graded School or Special Charter District for the purpose of paying said indebtedness, or any part thereof, and the property owners in said district are relieved of the payment of any tax which might otherwise be levied in said district exclusively for the year 1936, or any subsequent year, on account of said debt, and said debt and interest thereon shall be paid by the counties of Alamance and Orange out of their respective revenues lawfully provided for that purpose. This judgment shall not affect the right of the counties of Orange and Alamance and said Mebane Graded School or Special Charter District to collect all taxes levied exclusively upon the property in said district for the year 1935, or any prior year, for the purpose of providing revenue for the payment of said debt and interest. The defendants will pay the costs of this action, to be taxed by the clerk. This 7 August, 1936.                    CLAWSON L. WILLIAMS,
                                        *Judge Presiding."*

The defendant, County of Alamance and the Board of Education of Alamance County, made numerous exceptions and assignments of error and appealed to the Supreme Court. The necessary facts and law applicable thereto will be set forth in the opinion.

*Thos. C. Carter and Brooks, McLendon & Holderness for plaintiffs.*
*Rhodes & Shoffner and Long, Long & Barrett for defendants.*

CLARKSON, J. The prayer of the complaint indicates the controversy: "Plaintiffs pray that a writ of *mandamus* be issued against the counties of Alamance and Orange, and the boards of education of said counties, demanding them to forthwith assume the payment of the school building and equipment indebtedness of the plaintiffs, and requiring the defendants, counties of Alamance and Orange, to levy such county-wide *ad valorem* tax upon the taxable properties within the counties as may be necessary to pay such indebtedness and interest thereon when the same becomes due and payable, and further requiring the defendants, counties of Alamance and Orange, to proceed to collect through its authorities the said taxes so levied, . . . and such other and further relief as they are entitled in law and equity."

The defendants denied the material allegations of the complaint, and contended they acted in good faith and in their discretion, and *mandamus*

would not lie. The defendants, county of Orange and the board of education of Orange County, were both duly served with summons and copies of the complaint, but neither filed an answer or other pleadings. Therefore, there is no controversy as to the judgment against them. This appeal alone concerns the county of Alamance and the board of education of Alamance County.

The defendants, at the close of plaintiffs' evidence and at the close of all the evidence, made motions in the court below for dismissal of the action and for judgment as in case of nonsuit. C. S., 567. The court below refused these motions and in this we see no error.

The defendants, in their question one, ask: "Did the court err in overruling defendants' motion to dismiss this action, and in overruling their motions for judgment as of nonsuit, for the reason that the question as to whether or not the board of commissioners may include in the debt service fund in the budget the indebtedness of the Mebane School District is within the discretion of the board of commissioners of the defendant Alamance County, and *mandamus* is not the proper remedy and will not lie without the allegations and proof of abuse of such discretion?" On this record, we cannot agree with the contention of defendants.

In *Person v. Doughton,* 186 N. C., 723 (724), it is said: "*Mandamus* lies only to compel a party to do that which it is his duty to do without it. It confers no new authority. The party seeking the writ must have a clear legal right to demand it, and the party to be coerced must be under a legal obligation to perform the act sought to be enforced. *Missouri v. Murphy,* 170 U. S., 78; *Withers v. Comrs.,* 163 N. C., 341; *Edgerton v. Kirby,* 156 N. C., 347; *Betts v. Raleigh,* 142 N. C., 229." *Umstead v. Board of Elections,* 192 N. C., 139; *Braddy v. Winston-Salem,* 201 N. C., 301; *Hammond v. Charlotte,* 206 N. C., 604; *Stone v. Comrs.,* 210 N. C., 226; *Allen v. Carr,* 210 N. C., 513 (519).

This action was instituted by Mebane Graded School District and the town of Mebane, for the purpose of obtaining a writ of *mandamus* requiring the defendants to assume the payment of the bonded indebtedness of the Mebane Graded School District, alleged to have been incurred by it for the purpose of providing school buildings, sites, and equipment within the said special charter district necessary for the operation of the six months school term.

In *Julian v. Ward,* 198 N. C., 480 (482), is the following: "Under Article IX, 'Education,' in the Constitution of North Carolina, we find the following sections: 'Section 1. Religion, morality, and knowledge being necessary to good government and the happiness of mankind, schools and the means of education shall forever be encouraged. Sec. 2. The General Assembly, at its first session under this Constitution, shall provide by taxation and otherwise for a general and uniform system of

public schools, wherein tuition shall be free of charge to all the children of the State between the ages of six and twenty-one years. And the children of the white race and the children of the colored race shall be taught in separate public schools; but there shall be no discrimination in favor of, or to the prejudice of, either race. Sec. 3. Each county of the State shall be divided into a convenient number of districts, in which one or more public schools shall be maintained at least six months in every year, and if the commissioners of any county shall fail to comply with the aforesaid requirements of this section, they shall be liable to indictment.' Under these and other pertinent sections of the Constitution, it has been held in this jurisdiction that these provisions are mandatory. It is the duty of the State to provide a general and uniform State system of public schools of at least six months in every year wherein tuition shall be free of charge to all the children of the State between the ages of six and twenty-one. It is a necessary expense and a vote of the people is not required to make effective these and other constitutional provisions in relation to the public school system of the State. Under the mandatory provision in relation to the public school system of the State, the financing of the public school system of the State is in the discretion of the General Assembly by appropriate legislation, either by State appropriation or through the county acting as an administrative agency of the State. *Lacy v. Bank,* 183 N. C., 373; *Lovelace v. Pratt,* 187 N. C., 686; *Frazier v. Commissioners,* 194 N. C., 49; *Hall v. Commissioners of Duplin,* 194 N. C., 768." *Castevens v. Stanly County,* 209 N. C., 75.

The duty imposed on the State, under Art. IX of the Constitution of North Carolina, is mandatory. This sacred duty was neglected by the State for long years, for various reasons, chiefly on account of the lack of means—the State having been crushed and impoverished by four years of war. In different parts of the State, as they became more prosperous, patriotic men and women obtained acts from the General Assembly by which schools could be established for the education of the children of their communities—these communities being taxed for the upkeep and bonds issued to build schoolhouses, as was done in this case.

On this record it appears that "The county of Alamance has assumed every school debt of every school district in the county except the debts of the special charter districts of Mebane, Haw River, Graham, and Burlington." Having assumed some, we think it mandatory on the county commissioners to assume all, if the Mebane District building, site, and equipment are necessary for the conduct of the constitutional school term.

In *Reeves v. Board of Education,* 204 N. C., 74 (77), it was said: "The maintenance and construction of school buildings for the six

months public school term being prescribed by the Constitution, the county commissioners could have been compelled to have provided the school buildings in Buncombe County as a county-wide charge, and could have been compelled to have provided the money therefor by the issuance of county-wide bonds; therefore, it would follow that if the various buildings in the various school districts are a county charge, it is proper for the county to assume this obligation which has heretofore been attempted by the districts. There is no sound reason why a school district should have to pay out of its own taxable property a debt which the Constitution and laws of the State impose upon the county," etc.

We think the whole matter has been threshed out, and against defendants' contentions, in *Hickory v. Catawba County,* 206 N. C., 165 (173-4). We find there the following: "When the indebtedness of 'all the districts' lawfully incurred for the necessary buildings and equipment is taken over for payment by the county as a whole, the local districts are relieved of their annual payments. Sec. 5599. This is not a problem to be solved by the defendants in the exercise of their discretion, or one in the solution of which the courts are shorn of jurisdiction. The exercise of jurisdiction implies the right to hear evidence on the question whether buildings and equipment of certain types are essential to the operation of the schools, and as the witnesses who testified as to these buildings were qualified to speak, the exceptions addressed to the admissibility of their testimony cannot be sustained. . . . It is suggested that relief cannot be obtained by *mandamus.* The writ, issuing from a court of competent jurisdiction, is directed to a person, officer, corporation, or inferior court commanding the performance of a particular duty which results from the official station of the party to whom it is directed or from operation of law. It is a writ of right to which everyone is entitled when it is appropriate process for enforcing a demand. *Burton v. Furman,* 115 N. C., 166; *Lowery v. School Trustees,* 140 N. C., 33. The defendants are public agencies charged with the performance of duties imposed by the Constitution and by statutes, and upon their failure or refusal to discharge the required duties resort may be had to the courts to compel performance by the writ of *mandamus.* It is contended that the plaintiffs' remedy is by indictment (Const., Art. IX, sec. 3) and not by *mandamus.* There are decisions in which the writ was denied on the ground that the complaining party had a remedy by indictment; but the weight of authority sustains the position that to supersede the remedy by *mandamus* a party must not only have an adequate legal remedy but one competent to afford relief on the particular subject matter of his complaint. Punishment of the defendants would not provide the relief to which the plaintiffs are entitled. 38 C. J., 565, sec. 35; *Fremont v. Crippen,* 70 A. D., 711; *Com. ex rel.*

*Schaffer v. Wilkins,* 19 A. L. R., 1379, and annotation." *Greensboro v. Guilford County,* 209 N. C., 655; *Marshburn v. Brown,* 210 N. C., 331 (338); chapter 455, Public Laws 1935, sec. 5.

The first issue submitted to the jury and their response thereto is as follows: "Have the counties of Orange and Alamance, or either of them, provided necessary school buildings and equipment for the conduct of the constitutional six months school term for the children of the Mebane Graded School District? Ans.: 'No.'"

Seventh issue: "Were the sites, buildings, and equipment acquired, constructed, and used by the plaintiff Mebane Special Charter or Graded School District reasonably essential and necessary for the conduct and operation of the six months school term at the time the said sites, buildings, and equipment were acquired and constructed, as contemplated by Article IX, section 3, of the Constitution of the State of North Carolina, and the statutes enacted pursuant thereto? Ans.: 'Yes.'"

We think there was ample and plenary competent evidence to support the finding of facts on the above issues, but defendants say that on the trial the court below erred in admitting and excluding evidence, as follows: "(a) In admitting opinion evidence of witnesses for plaintiffs. (b) In excluding opinion evidence of witnesses for defendants." None of these contentions of defendants can be sustained. The question of what is and what is not opinion evidence is too well settled to be restated here. *Yates v. Chair Co., ante,* 200; *Keith v. Gregg,* 210 N. C., 802. As to the exclusion of certain alleged opinion evidence of witnesses for defendants, we think this evidence vague, uncertain, and immaterial, and it had little or no probative force or value on the issues. (c) "In excluding all of defendants' evidence with reference to schools and school buildings other than Mebane Special Charter School District." We think this kind of evidence not germane to the issue. It was comparative evidence and its exclusion on this record is not prejudicial error. As to (d) "In admitting secondary evidence to show that the debt of Mebane Graded School District was lawfully incurred"—in the admission of this evidence there was no error. We think from the evidence the foundation was sufficiently laid for the admission of secondary evidence. *Chair Co. v. Crawford,* 193 N. C., 531 (532), controlling principle 4.

Beginning with the year 1933, the records of the county show that all the debt service requirements of all the local tax districts in Alamance County, other than the four charter districts of Mebane, Burlington, Haw River, and Graham, have been paid out of the county's general school fund, and that the special charter districts have, since said time, received the per capita allotment of the county-wide levy for debt service. In the refunding plan prepared by the county commissioners in 1933,

8—211

it was stated therein that the school district indebtedness assumed by the county amounted to $247,650, and that Mebane Graded School indebtedness was $59,000. (The judgment in this case states a less amount.)

The defendants contend that "the court erred in its failure to charge the jury in accordance with the provisions of Consolidated Statutes, section 564." We cannot so hold.

The principle is laid down in *S. v. Merrick,* 171 N. C., 788 (793): "And further, the authorities are at one in holding that, both in criminal and civil causes, a judge in his charge to the jury should present every substantial and essential feature of the case embraced within the issue and arising on the evidence, and this without any special prayer for instructions to that effect. Charged with the duty of seeing that impartial right is administered, it is a requirement naturally incident to the great office he holds and made imperative with us by statute law. Revisal, 545 (C. S., 564): 'He shall state in a plain and correct manner the evidence in the case and explain the law arising thereon,' and a failure to do so, when properly presented, shall be held for error. When a judge has done this, charged generally on the essential features of the case, if a litigant desires that some subordinate feature of the cause or some particular phase of the testimony shall be more fully explained, he should call the attention of the court to it by prayers for instructions or other proper procedure; but, as stated, on the substantive features of the case arising on the evidence, the judge is required to give correct charge concerning it. *S. v. Foster,* 130 N. C., 666; *S. v. Barham,* 82 Mo., 67; *Carleton v. State,* 43 Neb., 373; *Simmons v. Davenport,* 140 N. C., 407."

The above is well settled law in this jurisdiction. The court below, in an elaborate and carefully prepared charge of some 24 pages, gave the contentions fairly for both sides, set forth the law applicable to the facts, and did not impinge C. S., 564.

The plaintiffs contend: "That the judgment of the Superior Court should be affirmed, first, because as a matter of law arising upon the whole record the plaintiffs are entitled to the relief prayed for; and, secondly, because there is no reversible error appearing in the record."

The evidence excluded by the court below, complained of by defendants, had little, if any, probative force. All the evidence was to the effect that the school building and equipment of the Mebane District, when built, was then, and we may say now, necessary for the six months school term under the Constitution. The evidence shows unusual care in the selection of plans and economy in the Mebane District project. The progressive, intelligent, and patriotic men and women wanted to educate the children of the Mebane community. They established the school and operated same especially with efficiency since the bonds were issued in 1922. Under legal authority, the county of Alamance has assumed

almost every school debt of every school district except the Mebane District. Having assumed part, it is the duty, under the facts in this case, to assume the indebtedness of the Mebane District, and from the findings of the jury *mandamus* will lie to compel them to do so. Technicalities and refinements should not be seriously considered in a case like this involving a constitutional mandate, but the record should be so interpreted that substantial justice should be done. Under the facts in this case and the findings of the jury, it would be inequitable and unconscionable for defendants to assume part and not all of the indebtedness of the school districts of Alamance and not assume the plaintiffs' indebtedness and give them the relief demanded. It is well settled that defendants are not entitled to be heard on their appeal unless the errors complained of are prejudicial or material.

For the reasons given, we see in the judgment below, no prejudicial or reversible error.