STATE v. WILBURN HORNBUCKLE.

(Filed 22 September, 1965.)

1. **Assault and Battery §§ 9, 15;　Homicide § 10—　Private citizen has right to interfere to prevent felonious assault on third person.**

Defendant's evidence to the effect that he was driving his car with two male passengers on the front seat and a male and female passenger on the back seat, that prosecuting witness, one of the front seat passengers, made advances toward the girl, that when she paid no attention to him he became angry and struck at her with a knife, that defendant saw the prosecuting witness start to strike the girl again, that he grabbed the arm of the prosecuting witness, stopped the car and in wrestling the knife away from the prosecuting witness cut him, *held* sufficient to require an instruction as to the right of defendant to interfere and fight in the defense of his

passenger, and a charge which gives defendant's contentions with respect to his right to fight in defense of his passenger but which fails to explain and declare the law arising on the evidence in the case is error.

**2. Criminal Law § 107—**

It is prejudicial error for the court to fail to instruct the jury on substantive features of the case arising on the evidence, even though there is no prayer for special instructions.

APPEAL by defendant from *Froneberger, J.,* February Session 1965 of JACKSON.

This is a criminal action in which the defendant was indicted for a felonious assault with a deadly weapon, to wit, a knife, with intent to kill, not resulting in death but inflicting serious bodily injuries upon the prosecuting witness, Willard Williamson.

The State's evidence tends to show that on the night of 29 July 1962 the prosecuting witness, Willard Williamson, was assaulted by the defendant, Wilburn Hornbuckle, who inflicted various knife wounds requiring over 100 stitches. Williamson testified that he was riding in the front seat of Hornbuckle's automobile; that Hornbuckle was driving and that Charlie Owl was sitting on Williamson's right; that Myrtle Driver and James Consene were riding on the back seat; that they had purchased a gallon of home-brew and were riding around drinking; that Hornbuckle stopped the car, opened the door, stepped out and started cutting him with a knife. The evidence further tends to show that there was no friction or trouble between defendant and Williamson prior to the cutting; that the others got out of the car but got back in the car soon thereafter and Hornbuckle continued to drive around and told Williamson that he would not let him out of the car, saying, "I am on probation and you are not going to mess me up." Hornbuckle continued driving for about an hour before Williamson opened the door and rolled out down an embankment and hid until he could secure aid from the Shady Lane Motel nearby.

The defendant's evidence tends to show that Hornbuckle was driving the car, Charlie Owl was in the middle and Williamson was on the right front seat, with Consene and Myrtle Driver on the back seat; that Williamson had requested Hornbuckle to take him home; while on the way, Williamson began drinking liquor from a bottle he had on his person when he entered defendant's car, would not get out of the car at his home and asked to be taken to his mother's; that he would not get out of the car when he arrived at his mother's home and continued to ride around with the defendant, drinking, cursing and attempting to hold the hand or date Myrtle Driver in the back seat; that she would not pay any attention to him and that Williamson became angry and suddenly took his knife and struck at Myrtle Driver; that defendant

saw the knife and as Williamson started to strike at Myrtle Driver again, the defendant grabbed the arm of Williamson, stopped the car and wrestled the knife away from him; that in the process of getting the knife, Williamson was cut; that he did not intentionally cut Williamson and that the yellow-handled knife the defendant took from Williamson belonged to the prosecuting witness. Defendant's evidence was to the further effect that no one bought or drank any home-brew; that no one drank any liquor while defendant was driving around during the time in question except the prosecuting witness. The testimony of defendant's witness, James Consene, corroborated the defendant's version as to what happened during the evening of 29 July 1962.

At the time of the trial, Myrtle Driver, according to the testimony, was living in South Dakota and was not available as a witness for the trial. Charlie Owl was not offered as a witness by the State or the defendant. Whether he was available or not was not disclosed.

The jury returned a verdict of guilty of assault with a deadly weapon. The court imposed a sentence of fifteen months, and the defendant appeals, assigning error.

*Attorney General Bruton, Asst. Attorney General James F. Bullock for the State.*

*Marcellus Buchanan, III, T. D. Bryson, Jr., attorneys for defendant.*

DENNY, C.J. The evidence of the State and that of the defendant is in sharp conflict. The prosecuting witness testified that he had no knife and never attempted to use one. On the other hand, the defendant testified that the prosecuting witness tried to cut Myrtle Driver with a yellow-handled knife and that he intervened and took the knife away from the prosecuting witness to keep him from cutting Myrtle Driver who was a guest passenger in the defendant's automobile.

The defendant assigns as error the failure of the court below to charge the jury that he as a private citizen had the right to interfere in order to prevent the prosecuting witness from committing a felonious assault on Myrtle Driver.

The State concedes that the defendant's evidence was sufficient to require an instruction as to the right of the defendant as a private citizen to interfere with and prevent the prosecuting witness from committing a felonious assault on Myrtle Driver who was a guest passenger in his car.

In 41 C.J.S. Homicide, § 385, page 188, *et seq.*, it is said: "Where there is evidence which tends to support the issue that the homicide or assault was committed by accused in defense of the person of another,

the court should fully, correctly, and explicitly instruct as to the law on this point as applied to the facts of the case. * * *"

The law with respect to the right of a private citizen to interfere with another to prevent a felonious assault upon a third person is, well stated in *S. v. Robinson,* 213 N.C. 273, 195 S.E. 824, where Winborne, J., later C.J., said: "If the defendant * * * had a well-grounded belief that a felonious assault was about to be committed on * * * (another), he had the right and it was his duty as a private citizen to interfere to prevent the supposed crime. The principle of law is well settled in this State. *S. v. Rutherford,* 8 N.C. 457; *S. v. Roane,* 13 N.C. 58; *S. v. Clark,* 134 N.C. 698, 47 S.E. 36.

"The failure of the court to instruct the jury on substantive features of the case arising on the evidence is prejudicial error. This is true even though there is no special prayer for instructions to that effect. *S. v. Merrick,* 171 N.C. 788, 88 S.E. 501; *S. v. Bost, supra* (189 N.C. 639, 127 S.E. 689); *S. v. Thornton, supra* (211 N.C. 413, 190 S.E. 758); *School Dist. v. Alamance County,* 211 N.C. 213, 189 S.E. 873."

In the instant case, the court in its charge to the jury gave the defendant's contentions with respect to his right to defend Myrtle Driver but failed to explain and declare the law arising on the evidence presented by the defendant. This constituted prejudicial error. *S. v. Bryant,* 213 N.C. 752, 197 S.E. 530; *S. v. Robinson, supra; Keith v. Lee,* 246 N.C. 188, 97 S.E. 2d 859; *Therrell v. Freeman,* 256 N.C. 552, 124 S.E. 2d 522.

The defendant is entitled to a new trial and it is so ordered.
New trial.