STATE OF NORTH CAROLINA v. LEVON GRAVES

No. 7317SC350

(Filed 23 May 1973)

1. **Assault and Battery §§ 9, 15— defense of third person — failure to instruct**

   Where defendant saw one Samuel Graves force his former girl friend from a dance hall and down the street several blocks, knew that Samuel had threatened to kill the girl and that he was a dangerous man with a propensity for violent conduct, observed that Samuel was acting in a wild and irrational manner as if he had been drinking or taking some drugs and observed that Samuel reached for his pocket just before defendant shot him, the trial court committed prejudicial error in failing to instruct upon the right of defendant to go to the defense of a third person to prevent a felonious assault.

2. **Assault and Battery § 13— defense of third person — competency of evidence**

   Under proper factual circumstances evidence of threats is admissible upon a plea of defense of others; therefore, the trial court in a felonious assault case erred in excluding evidence that defendant was present and saw the prosecuting witness assault one Oscar Wrenn with a knife and that the prosecuting witness had threatened to kill his former girl friend, since this evidence had a direct bearing upon the reasonableness of defendant's belief that the girl was in danger of serious injury or death and would tend to justify his action in her defense.

APPEAL by defendant from *Seay, Judge,* 16 October 1972 Session of Superior Court held in ROCKINGHAM County.

Defendant Levon Graves, was tried upon a bill of indictment charging him with felonious assault on Samuel D. Graves.

The evidence for the State in substance tends to show that:

On 20 November 1971, Samuel Graves (not related to defendant Levon Graves) came into a "beer joint" known as Price's Danceland in Reidsville where defendant and his brother were standing by a piccolo. He talked with defendant about nothing in particular and then went outside. Shortly thereafter Beverly Henderson, Samuel's former girl friend, passed him and entered the beer joint. Samuel reentered Price's Danceland and " . . . caught hold of Beverly . . . and [I] pulled her out. . . . " Defendant was inside but Samuel was not sure just where. Samuel took Beverly by the arm and told her he wanted to talk to her. He was attempting to get her to go back with

him as his girl friend and walked several blocks with her holding her by the arm. She refused and told him she " . . . wanted to go home. I mean come back uptown." As Samuel and Beverly came through an alley, he saw defendant and another boy at the other end of the alley. Samuel picked up something like a wooden basket and grabbed Beverly and started toward Price's. They met Beverly's brother, Arthur Henderson, who told him to let his sister go and said he was going for the police. Samuel caught Arthur Henderson by the arm and the three of them went around the corner. When they went around the corner, a car pulled up and defendant jumped out. He was talking so fast that Samuel could not understand him. Arthur Henderson went one way and Beverly the other and defendant shot Samuel in the left arm with a shotgun. Samuel did not have a knife or gun in his pocket and did not make a motion toward his pocket.

On cross-examination, Samuel admitted that he did not ask Beverly if she wanted to accompany him and she was crying " . . . because I would not let her go." He further admitted that "I knew that she wanted to get loose. But I did not turn her loose."

He admitted that he had been convicted for breaking and entering and larceny, for assault with a knife upon one Oscar Wrenn, for shooting James Brown with a shotgun, and several other criminal offenses.

Again upon cross-examination, Samuel admitted that he had threatened Beverly about going with Levon (defendant) and had been to her home arguing with her about this and hit her several times.

The evidence for defendant presented a somewhat different story. Defendant testified in substance as follows:

At the time of this occurrence he was dating Beverly Henderson every weekend, they were engaged to be married, and later she became his wife. He was at Price's Danceland when Samuel Graves came in and talked to him about Beverly Henderson and that " . . . she had done him wrong. . . . "

Shortly thereafter Beverly came into Price's and he asked her a question but before she could answer, Samuel came up and grabbed her around the neck. When defendant protested

Samuel hit him and shoved him back and defendant was scared of him because he knew his reputation.

Samuel forced Beverly out of the door. She was crying. He followed them down the street and looked for a policeman but there were none in sight. When they came back through the alley, Samuel asked if anybody wanted to do anything and he told him that nobody wanted to mess with him. Samuel ran his hand in his pocket and defendant jumped back. Samuel took off up the street with Beverly. Defendant was scared and got a shotgun out of his car trunk and put it on the back seat. When Samuel and Beverly reached a vacant lot near Price's, defendant and Henry Alston drove up in the car and defendant saw them and turned around and got the gun and jumped out. Defendant knew Samuel had threatened to kill Beverly because Samuel had told his sister. When defendant jumped out, he told Samuel to turn Beverly loose and then in his own words on cross-examination, "I shot him because when he run his hand in his pocket I didn't know if he was going to hurt my girl or me. I didn't know what he had in his pocket." Also on cross-examination, defendant testified that " . . . I knew that he was a dangerous man" and "I did not see any weapon but I knowed that he carried a weapon."

Beverly Henderson Graves, now defendant's wife, testified in substance:

When she entered Price's Danceland all of a sudden Samuel Graves put his hand around her neck and when she tried to remove his hands, told her " . . . to leave them alone or he would break my neck." He grabbed her by the neck and pulled her out of the place and pushed and shoved her down the street with his left hand around her neck and his right arm with her right arm. She was crying and telling him to turn her loose but he would not, saying she had done him wrong. As they went down the street, someone asked " . . . why don't you turn that girl loose . . . " and he said " . . . mind your own business, it don't concern you." Her girl friend protested and he threatened to kill her. He acted wild and pushed her (Beverly) against a fence with his hand around her neck and said " . . . I ought to kill you right here. . . . " She was crying and telling him to turn her loose and he kept saying she had done him wrong and Levon (defendant) was going to get his too. Her brother came down the street and told Sam to turn her

loose. Sam grabbed her brother by the arm and pulled them both into a vacant lot. Then Levon came in a car driven by a friend. " . . . Levon got out of the car and told Sam to turn me loose and Sam, he had hold of me then, and he dropped this hand from my arm and started to reach for something in his pocket and Levon shot him. . . . At that time he was holding me with his right hand. . . . When he [Levon] told Sam to turn me loose, Sam dropped his hand from me and started to reaching for his pocket. . . . "

She testified that she was scared of him and did not know what he would do. Sam was mistreating her and that was the reason Levon shot him. He had threatened her a lot of times.

Arthur Henderson, brother of Beverly, testified that he tried to get Samuel to release Beverly who was crying and trying to get loose and that " . . . it looked to me like Samuel was starting in his pocket . . . when Levon shot him. . . . [H]e looked like he had been drinking or taking something. . . . [H]e looked wild . . . like he was losing his mind, like he was crazy. . . . "

Henry Alston testified that he was driving the car and pulled in the vacant spot where Samuel and Beverly were and that is when Levon got the gun out of the rear of the car and jumped out; that Levon told Samuel to turn her loose and when Samuel went in his pocket, Levon shot him; that Samuel looked like he had been smoking marijuana or drinking beer or something and was high.

The jury returned a verdict of guilty of assault with a deadly weapon inflicting serious injury, and defendant appeals from a judgment of imprisonment entered upon the verdict.

*Attorney General Morgan by Assistant Attorney General Walter E. Ricks III for the State.*

*Gwyn, Gwyn & Morgan by Melzer A. Morgan, Jr., for defendant appellant.*

BALEY, Judge.

[1] The defendant assigns as error the failure of the court to charge the jury that he as a private citizen had the right to interfere in order to prevent Samuel Graves from committing a felonious assault on Beverly Henderson.

A private citizen has a right to go to the defense of another *if he has a well grounded belief that a felonious assault is about to be committed upon such other person.* In fact, it is his duty to interfere to prevent the supposed crime. *State v. Hornbuckle,* 265 N.C. 312, 144 S.E. 2d 12; *State v. Robinson,* 213 N.C. 273, 195 S.E. 824; *State v. Clark,* 134 N.C. 698, 47 S.E. 36. It is a matter for the jury to determine from the evidence under proper instructions if a defendant has such a well grounded belief that it will justify intervention in the defense of another. *State v. Robinson, supra.*

There is ample evidence in this case from which a jury could conclude that a felonious assault was about to be committed by Samuel Graves upon his ex-girl friend, Beverly Henderson, and that the defendant had reason to believe that such an assault was imminent and was attempting to prevent it. The defendant had witnessed the entry of Samuel Graves into Price's Danceland and had seen Beverly Henderson forced to accompany Samuel against her will for several blocks. He knew that Samuel had threatened to kill Beverly and that he was a dangerous man with a propensity for violent conduct. Testimony given by defense witnesses indicated that Samuel was acting in a wild and irrational manner as if he had been drinking or taking some drugs and appeared to reach for his pocket just before defendant fired his gun.

The language in *State v. Hornbuckle, supra,* at 314-15, 144 S.E. 2d at 14, is here applicable: "In 41 C.J.S. Homicide, § 385, page 188, *et seq.,* it is said: 'Where there is evidence which tends to support the issue that the homicide or assault was committed by accused in defense of the person of another, the court should fully, correctly, and explicitly instruct as to the law on this point as applied to the facts of the case.' "

In this case the court in its charge to the jury gave a summary of the contentions of the defendant but failed to explain and declare the law arising upon the defendant's evidence with respect to the right of the defendant to go to the defense of a third person. It is prejudicial error when the court fails to instruct the jury on a substantial feature of the case arising on the evidence. G.S. 1-180; *Bulluck v. Long,* 256 N.C. 577, 124 S.E. 2d 716.

[2] The defendant also contended that the court erroneously excluded evidence offered by him tending to show that he was

present and saw the prosecuting witness assault Oscar Wrenn with a knife and that the prosecuting witness had threatened to kill Beverly Henderson. This bears directly upon the reasonableness of defendant's belief that his girl friend was in danger of serious injury or death and would tend to justify his action in her defense.

By statute evidence of threats is admissible in assault cases upon a plea of self-defense. G.S. 14-33.1. Logically under proper factual circumstances such evidence is admissible upon a plea of defense of others.

Other assignments of error with respect to exclusion of evidence are not considered as they may not arise in a subsequent trial.

The defendant is entitled to a new trial and it is so ordered.

New trial.

Judges BROCK and BRITT concur.