STATE v. BLEVINS.

(Filed May 16, 1905.)

*Homicide—Self-Defense—Felonious Assaults—Necessity for Killing—Question for Jury—Duty of Retreating.*

1. Where a man is without fault and an assault with intent to kill is made upon him, he is not required to retreat, but may stand his ground, and if he kill his assailant and it is necessary to do so to save his own life, or protect his person from great bodily harm, it is excusable homicide.

2. The necessity, real or apparent, for killing one's assailant to protect one's self is a question to be determined by the jury on the facts as they reasonably appeared to the one assailed.

3. In ordinary assaults (not felonious), even with a deadly weapon, a man assailed is required to withdraw if he can do so and to retreat as far as consistent with his own safety, before killing his assailant in self-defense.

STATE v. BLEVINS.

INDICTMENT against Flem Blevins for the murder of J. J. Buchanan, heard by *Judge T. A. McNeill* and a jury, at the February Term, 1905, of the Superior Court of MITCH-ELL County. The jury found the prisoner guilty of man-slaughter, and he excepted and appealed from the judgment pronounced.

*Robert D. Gilmer, Attorney-General,* and *A. C. Avery* for the State.
*S. J. Ervin* and *W. C. Newland* for the defendant.

HOKE, J. There was evidence of the State tending to show that the prisoner was guilty of murder. The prisoner testified in his own behalf that he was on his way to town and came up to Jason Harrell's house where a lot of men were assembled. One Waits Harrell and his son, George, were in a fuss, and witness interfered to try and keep it down. George had threatened to kill his father and each had a gun. Some of the men had hold of George, and witness took hold of Waits Harrell's gun and wrenched it out of his hand and was going off with it. As the prisoner walked away with the gun, he saw the deceased cutting at Jason Harrell; had given him a severe wound and was raking at him with a knife when the prisoner called to the deceased to "stop that;" was walking towards them, called two or three times and said, "don't do that," "put that up," when the deceased turned and came at witness "full dive with a knife." The witness "kinder backed to the right," said "take care, take care," and as he was coming on, the witness pointed the gun and fired and killed him. He was coming on in a stooping position with his left hand extended and right hand raised. The witness shot him because witness thought he was going to kill him with that knife. The witness had nothing against him. The deceased came on the witness very brisk, and the witness never retreated very far—didn't have time

to. At the time the witness said "Don't do that," the deceased was raking at Jason Harrell with his knife. He fell near the end of the gun. The deceased was running on the witness "full dash," when the witness shot. He never pointed the gun at the deceased till he started at the witness.

In apt time the prisoner requested the court to give the jury the following instruction: "4. If the deceased attacked the prisoner with a deadly weapon, to-wit, a knife, intending to kill him, then the prisoner was not required to retreat, but had the right to stand his ground and repel force with force, and to kill the deceased if necessary to defend himself from death or great bodily harm · * * *." The court declined to give this instruction, and the prisoner excepted.

To another prayer, in substance, that if the deceased assaulted the prisoner with a knife and with intent to kill under the circumstances as stated by him, and it was necessary for the prisoner to kill the deceased to save his own life or protect his person from great bodily harm, such killing would be excusable on the ground of self-defense, the court added: "If the prisoner was unable to retreat with safety."

It has been established in this State by several well considered decisions that where a man is without fault, and a murderous assault is made upon him—an assault with intent to kill—he is not required to retreat but may stand his ground, and if he kill his assailant and it is necessary to do so in order to save his own life or protect his person from great bodily harm, it is excusable homicide and will be so held; (*State v. Harris*, 46 N. C., 190; *State v. Dixon*, 75 N. C., 275; *State v. Hough*, at this term), this necessity, real or apparent, to be determined by the jury on the facts as they reasonably appeared to him.

True, as said in one or two of the decisions, this is a doctrine of rare and dangerous application. To have the benefit of it, the assaulted party must show that he is free from blame in the matter; that the assault upon him was

with felonious purpose, and that he took life only when it was necessary to protect himself. It is otherwise in ordinary assaults, even with deadly weapons. In such case a man is required to withdraw if he can do so, and to retreat as far as consistent with his own safety. *State v. Kennedy,* 91 N. C., 572. In either case, he can only kill from necessity. But, in the one, he can have that necessity determined in view of the fact that he has a right to stand his ground; in the other, he must show as one feature of the necessity that he has retreated to the wall.

Without intending in any way to pass on the probative force of the testimony, there was evidence on the part of the prisoner tending to show that he was without fault, and that the deceased made an assault upon him with intent to kill, and with present power to carry out his felonious purpose. If this is true, the prisoner had a right to stand in his defense, and to have that phase of his testimony submitted to the jury, without requiring him to show that he endeavored to retreat. In so modifying one of the prisoner's prayers for instructions and in refusing the other, there was error committed, which entitles the prisoner to a new trial, and it is so ordered.

New Trial.