RALEIGH REAL ESTATE COMPANY v. MOSER.

(Filed 27 March, 1918.)

1. **Contracts—Options—Consideration—Withdrawal of Offer—Acceptance.**

   An offer to sell upon commission certain lands to a proposed purchaser, so much in exchange and the balance in cash or on certain conditions of payment, is not a valid contract to convey the lands, but a mere option, or unilateral contract without consideration, which the owner could withdraw before acceptance.

2. **Contracts—Options—Acceptance—Evidence—Questions for Jury—Trials.**

   Where the seller of lands upon commission under an option or unilateral contract containing certain conditions, and without consideration, tele-

graphs the proposed purchaser, who was absent, asking him when he could come and close the deal, and a date is set in reply, the telegraphic communication is not an acceptance of the proposal to sell, or to make it enforcible as a completed contract.

3. **Instructions—Trials—Requests—Contracts—Options—Acceptance—Evidence—Omissions.**

Where the evidence is conflicting as to whether the terms of an option without consideration to sell lands given to an agent for that purpose upon commission were withdrawn before acceptance, the question is one for the jury under proper instructions from the court; and where the court instructs the jury that it would be binding if the agent had procured a purchaser who was at all times ready, able and willing to purchase the property upon the stated terms, it is reversible error for him to omit or refuse to charge that the defendant would not be bound by his option if he had withdrawn it before its acceptance.

4. **Instructions—Trials—Evidence.**

A correct request for instruction which is not supported by the evidence is properly refused.

5. **Evidence—Principal Agent—Good Faith—Fraud.**

Evidence that an agent to sell land on commission was trying to get the best terms he could for a proposed purchaser is not alone, under the evidence in this case, sufficient of his bad faith or fraudulent purpose to obtain a greater price with the intention of appropriating the excess.

CIVIL ACTION, tried before *Devin, J.,* at June Term, 1917, of WAKE. There was a verdict and judgment for plaintiff, and defendant appealed.

*R. N. Simms for plaintiff.*
*Manning & Kitchin and J. C. Little for defendant.*

BROWN, J. This action is brought to recover of defendant $150, commissions alleged to be due plaintiff upon a real estate transaction. The evidence shows that the defendant owned a house and lot on Polk Street, in the city of Raleigh, and that T. W. Fenner owned lot No. 6 in Cameron Park, a suburb. The defendant had placed his house with plaintiff for sale at $3,500, the plaintiff to have 5 per cent commission for selling. The evidence shows that plaintiff had been negotiating with Fenner for a trade, and that Fenner had stated he would pay $1,350 "boot," together with $150, plaintiff's commission.

. It appears that Fenner left the city without concluding the trade and before plaintiff had received specific authority to make it. Thereafter defendant signed and gave plaintiff the following paper-writing on Wednesday, 9 February, 1916:

RALEIGH REAL ESTATE AND TRUST COMPANY:

I agree to trade my house, No. 407 Polk Street, for lot No. 6 in Cameron Park, together with $1,350 difference coming to me. The $1,350 payable in cash, if you can get same; if not, one-half cash and the balance in one year's time, secured by a first mortgage on house and lot, No. 407 Polk Street.

After receiving such authority, the following telegraphic correspondence was had:

RALEIGH, N. C., 9 February, 1916.

To T. W. FENNER,
      *Scotland Neck, N. C.*
Wire when to expect you here. We can trade.
                    RALEIGH REAL ESTATE AND TRUST COMPANY.

SCOTLAND NECK, N. C., 9 February, 1916.

RALEIGH REAL ESTATE AND TRUST COMPANY,
      *Raleigh, N. C.*
Will come Sunday. Will that do? Not convenient sooner.
                              T. W. FENNER.

RALEIGH, N. C., 10 February, 1916.

CAPT. T. W. FENNER,
      *Scotland Neck, N. C.*
Be in Raleigh not later than Monday morning.
                    RALEIGH REAL ESTATE AND TRUST COMPANY.

We are unable to agree that this correspondence constitutes a valid and enforcible contract of exchange on the part of Fenner. It is true that before leaving Raleigh he had expressed a willingness to trade upon certain terms, but his proposition was not accepted and he did not confirm it by telegraph. He merely replied that he would be in Raleigh at a certain time.

Neither is the writing signed by defendant a valid contract to convey. It was a mere option, a unilateral contract without consideration, which could be withdrawn before acceptance. It was authority for the broker to sell on the terms specified. As is said in *Trust Co. v. Adams,* 145 N. C., 161: "The defendants having specified no definite time for the duration of the plaintiff's employment as their broker when they appointed and authorized it to sell the lots, had the right to terminate it at will before any contract was affected with a purchaser, subject, however, only to the requirement of good faith."

It is contended by defendant that he revoked this authority on Saturday, 12 February, before any trade was consummated and before Fenner arrived at Raleigh.

17—175

As to what took place on the 12th, there is a conflict of evidence. The plaintiff's witness, Chamberlain, thus states his version: "The next conversation with Moser after 9th February was over the telephone Saturday, the 12th, and he said his wife would refuse to sign the deed, and said I need not go any further with it. I told him it was too late because we had a contract to the effect that he would accept the proposition that we had from Fenner. Mr. Moser said he would come down to see me; that was on Saturday, the 12th."

The defendant testified: "I do not know when the next conversation with them was, and it was a day or two later Mr. Chamberlain called me up and said he wanted to examine the title, and I told him that the title was all right, but that we need not go any further; that I had decided not to sell, and he said, 'What is the trouble?' and I said, 'I will come down and tell you what is the matter.' I went down to see him and told him that I had decided not to sell, and I told him that my wife had decided that she did not want to sell; and when that statement was made he had no information that Mr. Fenner had made any proposition."

The case appears to turn upon the disputed fact as to whether on Saturday the 12th the plaintiff had procured a bona fide purchaser who was ready, able and willing to take the property upon the defendant's terms, as stated in the paper-writing of 9 February, and had so notified defendant at the time when defendant undertook to withdraw the property. If so, upon practically all the authorities, plaintiff is entitled to recover.

Upon this phase of the case the court charged the jury: "If the jury should find from the evidence and by the greater weight thereof that the defendant M. A. Moser placed the property referred to in the evidence with the plaintiff, that is, the Raleigh Real Estate and Trust Company, for sale as real estate broker on specific terms of $3,500, that is, $2,000 in exchange for a lot and $1,500 cash, and with an agreement that of that amount the plaintiff was to have $150 for his commission in the transaction, and you find that thereupon the Raleigh Real Estate and Trust Company procured one Fenner, who was at all times ready, able and willing to purchase this property on the identical terms proposed by the plaintiff, to wit, $3,500, $2,000 for the lot and $1,500 in cash, and the plaintiff so informed the defendant in the conversation in which the defendant attempted to withdraw the authority, and you find that no material fact in relation to the transaction was concealed from the defendant by the plaintiff, the court instructs you to answer the issue $150 and interest. Unless you find these facts to be true, you will answer it 'Nothing.'"

The defendant requested this instruction: "Under the law the defendant had the right to withdraw his proposition at any time before the plaintiff produced a purchaser ready and willing to buy the property on the terms made by defendant, and if you find from the testimony that the defendant withdrew his proposition on Saturday, and that at that time the plaintiff had not effected a sale or trade, then you will answer the issue 'No,' or 'Nothing.'"

. In failing to give this instruction, we think the court erred. The instruction given is correct as far as it goes, but the judge failed to state the defendant's contention and to instruct them that the defendant had a right to withdraw his proposition under certain conditions, and what those conditions were. Even without a specific instruction, it was incumbent upon the judge to do this, for when the judge assumes to charge and correctly charges the law upon one phase of the evidence, the charge is incomplete unless it embraces the law as applicable to the respective contentions of each party, and such failure is reversible error. *Jarrett v. Trunk Co.*, 144 N. C., 299. As is held in *Baker v. R. R.*, 144 N. C., 37: "It is the duty of the trial judge to give a requested prayer for special instruction, which is correct in itself, material to the case and based upon certain phases of fact reasonably assumed upon the evidence, and a general and abstract charge of the law applicable to the case is not sufficient."

The defendant requested the court to charge the jury: "The law requires the utmost good faith on the part of an agent toward his principal, and if you should find that while the plaintiff was acting as agent for the defendant it was endeavoring to obtain a greater price than that fixed by the defendant, with the intention of appropriating such excess and not accounting for same to the defendant, then the plaintiff would be entitled to recover nothing for any efforts it might have made in trying to sell the property."

The instruction embodies a correct and very wholesome rule of law, but we do not think there is any sufficient evidence to support it.

Plaintiff's witness and agent, Chamberlain, testified: "As to the terms, he said he had the money, if necessary, but he would rather have some time on part of it. He had told me that when I wrote the letter to Moser I knew Fenner could pay cash, but said he would rather have a little more time. I do not recall that I told Moser that Fenner was ready to pay the difference in cash. I was trying to get the best terms I could for Fenner. He was buying from me and was a customer of mine."

This is the only evidence relied upon to support the instruction, and we think it fails to disclose any bad faith or fraudulent purpose upon the part of plaintiff. There is no evidence that plaintiff was Fenner's

agent to make the trade, or that plaintiff was to receive a dollar more for their services than the $150 agreed to by defendant. It is true this was to be paid by Fenner, but it was in exoneration of defendant. All the evidence shows that if the trade had been fully consummated, defendant would have received every dollar the paper-writing called for, and that plaintiff would have received no more than the stipulated commission of $150.

The language of the witness Chamberlain is ambiguous and its purport not quite understood by us, but it is probable that he was referring to the terms of payment. Certainly, nothing else appearing, it is not sufficient to brand plaintiff with bad faith and fraudulent conduct in its dealings with defendant.

For the error pointed out in the charge, there must be a

New trial.