M. F. BUTLER v. HOLT-WILLIAMSON MANUFACTURING COMPANY.

(Filed 30 November, 1921.)

**1. Evidence—Nonsuit—Trials—Statutes.**

Where exception is taken to the refusal of the court to dismiss the action, as in case of nonsuit, both after the close of plaintiff's evidence and after the defendant's evidence has been introduced, only the exception taken after the close of all the evidence will be considered on appeal, under the express provision of C. S., 567, and, so considered, the evidence must be accepted as true and construed in the light most favorable to the plaintiff.

**2. Principal and Agent—Damages—Scope of Agency.**

The principal is only bound by such acts of his agent as are within the scope of the duties the agent owes him, and which he has been authorized to perform, and none other, though the agent may have therein acted with the intent to benefit his principal.

**3. Same—Special Police—False Arrest—Night Watchman.**

The responsibility of defendant for damages for false arrest and imprisonment of the plaintiff, in his action for damages, by a night watchman, whose duties to the defendant were confined to a certain area within

an enclosure at defendant's mill and settlement, and for whom the watchman had been deputized as a special policeman, does not extend beyond the area restricted on the defendant's premises, and an arrest beyond them is not within the scope of the employment of the watchman, or within the scope of his duties to the defendant.

**4. Same—Evidence—Nonsuit—Trials.**

Where there is evidence tending to show that defendant's night watchman was employed to perform his duties only within a certain enclosure at the defendant's mill; that he had also been deputized by the town authorities to act for defendant as special policeman; that he had arrested the plaintiff at a remote place on the mill settlement property, where he was not authorized by the defendant to guard, and caused his incarceration in the city jail; that the case was dismissed by the justice of the peace for the lack of evidence and the plaintiff finally discharged: *Held*, a question for the jury in plaintiff's action for damages for false arrest and imprisonment, of whether the defendant's night watchman was acting within the scope of his employment at the time; and a motion as of nonsuit upon the evidence was properly denied.

**5. Appeal and Error—Objections and Exceptions—Instructions—Special Requests.**

Where the trial judge has assumed to charge upon a principle of law arising under the evidence in the case, he must do so in such way as not to cause prejudice to the appellant's right by an omission of material matter necessary for a comprehensive understanding by the jury of the principle laid down for their guidance, without the necessity of a proffered prayer for special instruction.

**6. Same—Special Police—Principal and Agent—Night Watchman.**

Where, in an action for damages for false arrest and imprisonment, the defendant, a cotton mill corporation, resists liability upon the contention, with supporting evidence, that the arrest was made by its night watchman beyond a certain enclosure wherein his duty to it was solely to have been performed, and upon a remote part of the mill settlement; and it appears that this watchman had been officially deputized by the town to act as a special policeman for the defendant, a general instruction resting defendant's liability upon whether the watchman acted within the scope of his employment, as such, without particularizing the law applicable to the defendant's evidence, is reversible error.

APPEAL by defendant from *Daniels, J.*, and a jury, at the April Term, 1921, of CUMBERLAND.

It is not necessary to set out all the evidence. So much is stated as is necessary to explain the questions presented.

The plaintiff brought suit to recover damages for false arrest and imprisonment. Evidence for the plaintiff tended to show the facts to be as herein stated. The defendant corporation was engaged in manufacturing cotton cloth in the city of Fayetteville. On 3 August, 1920, about sunset, the plaintiff went to Charles Maultsby's store, which was situated near the defendant's mill, to see Maultsby on a matter of business. Soon

BUTLER *v.* MFG. CO.

afterward he started home, and followed a footpath which led through a field over defendant's land on which the defendant's operatives lived; but this path did not extend through the enclosed mill property. On the way the plaintiff met Ed. Mazingo, the defendant's night watchman, who inquired where the plaintiff was going, and to the plaintiff's answer that he was going to the street, replied, "You can go with me." Plaintiff and Mazingo walked to the street and stopped, and Mazingo asked plaintiff whether he knew any one there, and was referred by plaintiff to Cato Salmon. The two thereupon went to the Holt-Morgan mill and had a conversation with Salmon, in which Mazingo said he had arrested the plaintiff "down the path." A policeman was then called, and the plaintiff and Mazingo went with him in a car to the courthouse, thence to the police station, and the plaintiff was placed in a cell, where he remained about an hour. The plaintiff then gave bond to appear at the trial the next morning, and was released from custody. Upon the hearing the court held the evidence to be insufficient, and the plaintiff was discharged. Mazingo was defendant's night watchman when the arrest was made, and had no warrant; he was not acting as policeman of the city, and was not on the payroll; but the mayor had sworn him in as special policeman to serve the defendant as night watchman.

Evidence for the defendant tended to show the facts to be as follows: Mazingo had been employed by the defendant as night watchman, and had served in this capacity about four years; there was a wire fence eight or ten feet high inclosing defendant's mill, warehouses, and yard, and it was Mazingo's duty to stay inside this inclosure, to keep watch on the boilers, and to see that no one interfered with any property inside the fence. Mazingo's instructions, given him by the defendant's superintendent, limited his authority to the inclosure, and he exercised no authority outside the fence, and had not done so during his four years service. He had been sworn in as a special policeman of the city of Fayetteville, and had a badge which had been given him by the chief of police. The defendant did not request that he be sworn in as a special policeman, and knew nothing about it. Mazingo was instructed by the city authorities to serve anywhere in the city as policeman. He had made arrests in the city off the defendant's property, and in no case had he made an arrest as night watchman. On the night this plaintiff was arrested, Mazingo was not acting as night watchman; he was off duty, and John Stevens had taken his place. Mazingo arrested the plaintiff, who was on a cement tile in the weeds near a woman's house, because he had been told by two or three people that a man of suspicious conduct had gone there. At the time of the arrest the plaintiff told him he was trying to ascertain whether Overton was going to see a certain woman who lived nearby. After the plaintiff had been taken to police headquarters, a warrant was "written out."

The issues as to the wrongful arrest, and as to compensatory damages were answered in favor of the plaintiff, and the defendant appealed.

*Bullard & Stringfield and H. L. Brothers for plaintiff.*
*Oates & Herring and Sinclair, Dye & Clark for defendant.*

ADAMS, J. First at the close of the plaintiff's evidence, and afterward at the conclusion of all the evidence, the defendant made a motion to dismiss the action as in case of nonsuit. Exception was duly entered to the court's denial of each motion. By the express terms of the statute the defendant has the benefit only of the latter exception. C. S., 567; *Riley v. Stone,* 169 N. C., 423. Therefore, all the evidence introduced at the trial must be accepted as true and construed in the light most favorable to the plaintiff. *Rush v. McPherson,* 176 N. C., 562.

The evidence introduced by the plaintiff tended to show that the mayor of the city of Fayetteville had administered the official oath to Mazingo, who was to serve the defendant, not the city, in the dual capacity of night watchman and special policeman; that on the evening of 3 August, 1920, the plaintiff, while on the defendant's premises, was arrested by Mazingo without a warrant, restrained of his liberty in the mill office, carried thence in a car by Mazingo and a city policeman to police headquarters, and there confined in a cell for the space of one hour; that he was then released from custody, having given bond to appear for trial on the day following; and that upon the hearing he was discharged by the court for want of sufficient evidence. The record does not show definitely that the mayor of the city administered the official oath to Mazingo at the request of the defendant, but it does tend to show that Mazingo had served the defendant as night watchman for a period of four years. There was other evidence tending to corroborate the testimony of the plaintiff concerning the circumstances under which the arrest was made. While we express no opinion as to its weight, we hold that the evidence was sufficient to justify his Honor in declining the defendant's motion.

It is not necessary to discuss all the other exceptions entered of record for the reason that one instruction which his Honor gave the jury entitles the defendant to a new trial. In the argument here the defendant emphasized the contention that if Mazingo in fact made the arrest he did so without the defendant's knowledge or authority, and that there was no evidence of ratification. Whether Mazingo, at the time of the arrest, was acting in the capacity of special policeman for the city, or in the capacity of night watchman for the defendant was a question directly relevant to the defendant's contention. If he made the arrest while purporting to act as night watchman, whether he was acting within the scope

of his authority, likewise, became a vital question. The defendant insisted that Mazingo had no authority to perform any duty or to do any act on its behalf outside the wire fence which inclosed the mill, the dyehouse, and the warehouses; and that as the arrest was effected outside this inclosure, the defendant was not liable in damages to the plaintiff.

His Honor delivered his charge to the jury just before the midday recess, and, upon reconvening the court, recalled the jury and gave the following additional instructions, which are numbered merely for the purpose of convenient reference:

1. "I am not sure that I made the statement to you that I intended to make in connection with the rest of my charge, and that was this: that if the arrest was wrongfully made by Mazingo and made about the company's business and within the scope of his employment, and if you are satisfied by the greater weight of the evidence, then you will answer the first issue 'Yes.'

2. "I intended in that same connection to tell you that if Mazingo made the arrest as night watchman, and while in the performance of his duty to the company, and within the scope of his employment, that would be a wrongful arrest, but before you can answer that issue 'Yes,' you would have to determine whether he was doing it about the company's business and within the scope of his employment. You will take this in connection with the rest of the charge I gave you.

3. "In other words, I called you back because I could not remember whether I told you that it would be a wrongful arrest for Mazingo to arrest the plaintiff if he was then acting as night watchman; that would make it wrongful, because as night watchman, according to his own contention, or the contention of the defendant, he had no right to make an arrest outside of the mill inclosure. You will take that in connection with the rest of my charge."

To the paragraphs numbered two and three the defendant excepted.

All the evidence of the defendant directly relevant to the question tended to show that Mazingo was employed to do certain work inside the wire fence, and not elsewhere; that he was not engaged to perform any duty for the defendant beyond the defined area; that he had never exercised or pretended to exercise any authority on behalf of the defendant outside this inclosure; that he received his instructions from the defendant, and knew the limit of his authority.

In Labatt's Master and Servant, sec. 2480, it is said: "The terms upon which a special policeman is appointed are usually such as to limit the exercise of his powers to a certain area. For wrongful arrest made by him at a place which was clearly outside that area, in respect of an offense previously committed, the party at whose request he was appointed cannot be held liable, even though the act was of such a

description that, if the element of locality were abstracted, the aggrieved party would have been entitled to recover." And in Wood's Law of Master and Servant: "The question usually presented is whether, as a matter of fact or of law, the injury was received under such circumstances that under the employment the master can be said to have authorized the act, for if he did not, either in fact or in law, he cannot be made chargeable for its consequences, because, not having been done under authority from him, express or implied, it can in no sense be said to be his act." Sec. 279.

The question is discussed by *Walker, J.,* in *Daniel v. R. R.,* 136 N. C., 517, in which are cited a number of the leading decisions. Upon a review of these authorities his conclusion is this: "It may then be gathered from the books as a general rule, which is clearly applicable to the facts of this case, that if the servant, instead of doing that which he is employed to do does something else which he is not employed to do at all, the master cannot be said to do it by his servant, and, therefore, is not responsible for what he does. It is not sufficient that the act showed that he did it with the intent to benefit or to serve the master. It must be something done in attempting to do what the master has employed the servant to do. *Mitchell v. Crasweller,* 76 E. C. L., 246; *Limpus v. L. G. O. Co.,* 32 L. J. (Exch.), 34. Nor does the question of liability depend on the quality of the act, but rather upon the question whether it has been performed in the line of duty and within the scope of the authority conferred by the master. The facts of this case do not bring it within the principle."

Mazingo testified that he was employed to serve as night watchman in the inclosure; to stay within it; to "look out for the boilers"; and to see that no one interfered with any of the inclosed property. His testimony was corroborated by that of the defendant's superintendent.

The arrest was made on a remote part of the defendant's property outside the inclosure. If, then, the jury should find the facts to be as contended by the defendant, it is obvious that Mazingo was not acting within the scope of his authority when he made the arrest.

In paragraph three of the instructions referred to his Honor expressly told the jury that the arrest was wrongful if made by Mazingo as night watchman, and at the same time permitted the jury, in response to the instruction in paragraph two, to pass upon the question whether Mazingo as night watchman was acting within the scope of his authority, without applying the instruction to the defendant's version of the evidence.

Without having tendered a written request, the defendant was entitled to the further instruction that if the jury should find from the evidence that Mazingo was employed to do certain work inside the inclosure, and not elsewhere, as contended by the defendant, and, laying aside this

work, he went outside the inclosure and made the arrest a considerable distance away, particularly at the instance of Royall or Brock, they should answer the issue in the negative, because in that event he would not be acting within the scope of his authority.

In *Real Estate Co. v. Moser,* 175 N. C., 259, it is said: "The instruction given is correct as far as it goes, but the judge failed to state the defendant's contention and to instruct the jury that the defendant had a right to withdraw his proposition under certain conditions, and what those conditions were. Even without a specific instruction it was incumbent upon the judge to do this, for when the judge assumes to charge and correctly charges the law upon one phase of the evidence, the charge is incomplete unless it embraces the law as applicable to the respective contentions of each party, and such failure is reversible error." *Jarrett v. High Point Co.,* 144 N. C., 299; *Lea v. Utilities Co.,* 176 N. C., 514.

His Honor's omission to instruct the jury more definitely upon the law and the evidence relative to the scope of Mazingo's authority was evidently prejudicial, and entitles the defendant to a

New trial.