STATE v. R. T. BRYANT.

(Filed 15 June, 1938.)

1. **Homicide § 27f—Instruction on question of self-defense held erroneous in failing to explain law in case of nonfelonious assault.**

The court correctly instructed the jury upon the right of a person upon whom a murderous assault is made and who is without fault, to stand his ground and kill his adversary, if necessary, in his self-defense. Defendant's evidence tended to show that he struck and fatally cut deceased only after defendant had retreated a number of feet, had fallen over an oil tank, and deceased was on top of him cutting him with a knife. *Held:* It was error for the court to have failed to further instruct the jury upon defendant's right, if they should find deceased was making a nonfelonious assault upon him, to exchange blow for blow, and though under duty to retreat, to kill his assailant if necessary in his self-defense after he had retreated with his "back to the wall," the law on this phase of the case being a substantive feature arising on the evidence.

2. **Criminal Law § 53a—**

It is error for the court to fail to charge the law applicable to a contention of defendant upon a substantive feature of the case arising upon the evidence, even in the absence of a special prayer for instructions.

3. **Homicide § 27f—Charge held for error in failing to instruct that necessity should be determined by jury upon facts as then appearing to defendant.**

The court charged that a person may use such force as reasonably appears necessary to repel an attack and save himself from death or great bodily harm. *Held:* The instruction is susceptible to the interpretation that the amount of force and the reasonableness of the necessity should be determined upon the facts and circumstances as they appeared at the time of trial, and is erroneous in failing to instruct the jury that the amount of force and the necessity to act should be determined by the jury upon the facts and circumstances as they appeared to the defendant at the time of the assault.

4. **Criminal Law § 81c—**

Conflicting instructions on a substantive feature of the case entitles defendant to a new trial, since it must be assumed on appeal that the jury were influenced in coming to a verdict by that portion of the charge which was erroneous.

**5. Criminal Law § 81d—**
    When a new trial is awarded for certain errors committed in the trial, other exceptions need not be considered.

APPEAL by defendant from *Phillips, J.,* at November Term, 1937, of FORSYTH.

Criminal action on indictment charging defendant with the murder in the second degree of one Glenn Riggs.

The defendant pleaded not guilty and relied upon the plea of self-defense.

The deceased, Glenn Riggs, received knife wounds inflicted by the defendant near midnight on 14 May, 1937, at the Valley View or Staley's Filling Station on a highway near Winston-Salem, North Carolina, and died as a result thereof on the second day thereafter.

In order to properly understand the evidence it is well to get the setting at the time of the killing. The filling station building is situate east and west facing a highway—whether east or west the evidence does not disclose. It consisted of two connecting rooms each with a door on the front. In front of and about ten feet from the building is a line of pumps. On the north end is a gasoline pump. South of it is an ice cream box. On the south end there is an oil tank with pump on top. From the gasoline pump on the north to the oil tank on the south is about twenty-five feet. From the door of the south room to the space between the north gasoline pump and ice cream box is about sixteen or seventeen feet. Cars were in front of the line of pumps, leaving narrow way between the cars and pumps. Defendant's car was near the north pump. Deceased and defendant were in the south room.

The defendant and Robert Rond, in defendant's automobile, came to the filling station about 11 o'clock at night. The deceased and Ralph Hendrix came soon afterwards. Others were there. Deceased had drunk some beer and the defendant had drunk some beer. Everybody was in good humor, laughing and joking until after deceased proposed to defendant and others that they "pitch in" and buy a pint of liquor. Then the deceased tried to get the defendant to put in a dollar. The defendant made some remark to the effect that he didn't believe deceased had any money. There is evidence that deceased became angry and called the defendant a G—— d—— liar. There is evidence that the defendant cursed the deceased. There is evidence that the defendant had out his knife and told the deceased that if he would go out in the highway "he would cut him in little pieces." The defendant denied this. There is evidence that the manager of the filling station told the deceased and the defendant that if they wanted to argue, to go on the outside. Some of the State's testimony tends to show that immediately the manager opened the door and the defendant started out; that de-

ceased followed and jumped on defendant from behind and struck him several times; and that deceased kept following the defendant as he backed until defendant fell over the oil tank, when deceased jumped on him and then was mortally cut.

The defendant testified that he saw that the deceased was mad, and he turned away, bought a glass of beer, and at the moment he was finishing drinking the beer, Robert Rond, who was out in the car, called out, "Come on, let's go, Mr. Bryant; I'm ready," to which defendant replied: "All right, I'm coming," turned around, set the mug down and started out the door to go home; and that at that time the deceased was sitting on a stool with his elbows on the counter.

Defendant testified: "I will say it was three or four minutes from the time Glenn cursed me and I drank the beer until I went out to go home."

State witness Ralph Hendrix testified: "Glenn told him he was a damned liar. I don't know as either one of them did anything then."

State witness Charlie Butner testified: "Mr. Bryant was drinking a mug of beer. He finished drinking that after this cussing. . . . He walked about three steps over to the counter and set it down. . . . It gave Gilmer (the manager) time to come down from the kitchen to the end of the counter and open the door. . . . He (Bryant) . . . turned and walked out . . . with his hands down by his side and went on out in a normal manner. . . . Glenn jumped on his back. . . . Mr. Bryant gave a twist of his shoulders and they were apart. . . . Glenn hit Mr. Bryant right up beside the head then. He hit him hard enough so it popped. . . . Glenn was behind him and come around long armed and hit him. . . . Mr. Bryant went on until he got between the column and the ice cream compartment. When he got through them he kind of turned up toward the car, and then Glenn got in front of him and headed him off from his car. . . . Then Mr. Bryant backed right along in front of the gas tanks and columns."

Defendant further testified: "Just as I stepped out at the door—I didn't know Mr. Riggs was behind me at all—he jumped on my back and came right under my chin and cut that place where it took six stitches to sew up. . . . My back was next to him. . . . After he cut me on the throat, I throwed him off my back and turned with my face to him. He hit me three times in the side of the head as I backed to the car. . . . I did not hit him. I did not strike at him. . . . I backed across the driveway and tried to get to my car. I backed all the way across the driveway by the north pump, between it and the ice cream freezer. I backed through there. . . . Mr. Riggs was coming right on after me hitting at me with that knife. After I got through the tanks I backed down south between the cars and the tanks. . . . Mr. Riggs was coming right on after me, and when I fell over that tank

backwards, that is when he stabbed me in the leg. He come right down on me and hit me with his left hand. My knife slipped out of my pocket and I grabbed it open and cut at him a time or two. . . . When I fell over the tank my hands and feet were up in the air. . . . I never did cut at him until he stabbed me in the leg and come down on me and hit at me. I did not cut him until I was flat on my back. . . . While I was backing I hollered and told them he was cutting me all to pieces and to get him off of me. Nobody seemed to take hold or help me or anything. I did not cut at him to kill him. My reason for cutting him was I was down on my back and bleeding, and thought I was already dead . . . God knows I didn't mean to kill him. . . . I done my best to get away from him."

Defendant contends (1) that he had abandoned any argument with deceased while in the building and by answering Rond, "All right, I'm coming," followed by his leaving the room, he gave the deceased notice of his withdrawal; (2) that after deceased had feloniously assaulted him, he retreated sixteen or seventeen feet toward his car, and on being cut off from it by deceased, he retreated twenty-five feet more until he fell, and that in that retreat he gave deceased further notice of his withdrawal from any altercation with him, and that he cut the deceased only after he had "retreated to the wall," lying flat on his back on the ground. Some of the witnesses testified that they did not see a knife in the hands of deceased.

Verdict: Guilty of manslaughter.

Judgment: Not less than seven years nor more than ten years in State's Prison at hard labor.

Defendant appealed to the Supreme Court, and assigns error.

*Attorney-General McMullan and Assistant Attorneys-General Bruton and Willis for the State.*

*Fred S. Hutchins, H. Bryce Parker, and J. P. Rumley for defendant, appellant.*

WINBORNE, J. The record discloses error affecting substantive rights of the defendant which necessitates a trial *de novo.*

Defendant excepts, *inter alia:* (1) To the failure of the court to declare and explain the law arising on the evidence in the case. (2) To that portion of the charge, after stating the principle with respect to the right of a man, who without fault himself is murderously assaulted, to stand his ground and fight in self-defense, in which the court summed up as follows: "In order to have the benefit of this principle of law, the defendant must show that he was free from blame in the matter, that the assault upon him was with felonious intent, with intent to kill, and that he took the life only when it was necessary or apparently so to protect himself."

The statement of law is correct as applied in the case of a felonious assault. But, having so charged, it was the duty of the court to go further and explain the principle of law applicable in case of non-felonious assault. The jury might have found that a felonious assault was not made, but that a nonfelonious assault, even with a deadly weapon, was made.

In *S. v. Hough,* 138 N. C., 663, 50 S. E., 709, *Brown, J.,* said: "There is a distinction made by the text writers in criminal law which seems to be reasonable and supported by authority, between assaults with felonious intent and assaults without such intent. 'In the latter the person assaulted may not stand his ground and kill his adversary if there is any way of escape open to him, though he is allowed to repel force by force and give blow for blow. In the former class, where the attack is made with a murderous intent, the person attacked is under no obligation to fly, but may stand his ground and kill his adversary, if need be.' 2 Bishop's Criminal Law, sec. 6333, and cases cited. It is said in 1 East Pleas of the Crown, 271, 'A man may repel force by force in defense of his person, habitation, or property against one who manifestly 'intends or endeavors by violence to commit a felony such as murder, rape, burglary, robbery, and the like, under either. In these cases he is not obliged to retreat, but may pursue his adversary until he has secured himself from all danger, and if he kill him in so doing it is called justifiable self-defense.' The American doctrine is to the same effect. See *S. v. Dixon,* 75 N. C., 275." *S. v. Glenn,* 198 N. C., 79, 150 S. E., 663.

In the case of *S. v. Blevins,* 138 N. C., 668, 50 S. E., 763, speaking to the subject, *Hoke, J.,* said: "It has been established in this State by several well-considered decisions that where a man is without fault, and a murderous assault is made upon him—an assault with intent to kill—he is not required to retreat, but may stand his ground, and if he kill his assailant and it is necessary to do so in order to save his own life or protect his person from great bodily harm, it is excusable homicide, and will be so held (*S. v. Harris,* 46 N. C., 190; *S. v. Dixon, supra; S. v. Hough, ante,* 663); this necessity, real or apparent, to be determined by the jury on the facts as they reasonably appeared to him. True, as said in one or two of the decisions, this is a doctrine of rare and dangerous application. To have the benefit of it, the assaulted party must show that he is free from blame in the matter; that the assault upon him was with felonious purpose, and that he took life only when it was necessary to protect himself. It is otherwise in ordinary assaults, even with deadly weapons. In such case a man is required to withdraw if he can do so, and to retreat as far as consistent with his own safety. *S. v. Kennedy,* 91 N. C., 572. In either case, he can only kill from necessity. But, in the one, he can have that necessity deter-

mined in view of the fact that he has a right to stand his ground; in the other, he must show as one feature of the necessity that he has retreated to the wall."

"When the judge assumes to charge and correctly charges the law upon one phase of the evidence, the charge is incomplete unless it embraces the law as applicable to the respective contentions of each party, and such failure is reversible error," Brown, J., in Real Estate Co. v. Moser, 175 N. C., 255, 95 S. E., 498; S. v. Bost, 189 N. C., 639, 127 S. E., 926.

The failure of the court to instruct the jury on this substantive feature of the case arising on the evidence is prejudicial. This is true even though there is no special prayer for instruction to that effect. S. v. Merrick, 171 N. C., 788, 88 S. E., 501; S. v. Bost, supra; S. v. Thornton, 211 N. C., 413, 190 S. E., 758; School District v. Alamance County, 211 N. C., 213, 193 S. E., 31; S. v. Robinson, ante, 273, 195 S. E., 824.

3. Defendant excepts to that portion of the charge which reads: "The means of force which a person is justified in using in self-defense depends upon the circumstances of the attack and must in no case exceed the bounds of mere defense and prevention, but if the one attacked uses such means of force only as is necessary or as reasonably appears to be necessary to repel the attack and save himself from death and great bodily harm, and death of his assailant ensues, it is justifiable and excusable homicide."

The error here is in the clause "as reasonably appears to be necessary." The reasonableness of the apprehension of the necessity to act and the amount of force required must be judged by the jury upon the facts and circumstances *as they appeared to the defendant at the time* of the killing.

The charge is in the present tense, and might have been understood by the jury to mean as the facts and circumstances appeared at the time of the trial. Being susceptible of that construction, we must assume that the jury so understood it.

In S. v. Barrett, 132 N. C., 1005, 42 S. E., 832, it is stated: "The defendant's conduct must be judged by the facts and circumstances *as they appeared to him at the time* he committed the act, and it should be ascertained by the jury, under evidence and proper instructions of the court, whether he had a reasonable apprehension that he was about to lose his life or to receive enormous bodily harm. The reasonableness of the apprehension must always be for the jury, and not the defendant, to pass upon, but the jury must form its conclusion from the facts and circumstances *as they appeared to the defendant* at the time he committed the alleged criminal act." (Italics ours.) Thus it appears that the jury must determine the reasonableness of the facts and circum-

stances *as they appeared to the party charged* at the time of the killing. *S. v. Blackwell,* 162 N. C., 672, 78 S. E., 316; *S. v. Marshall,* 208 N. C., 127, 179 S. E., 427; *S. v. Terrell,* 212 N. C., 145, 193 S. E., 161; *S. v. Robinson, supra; S. v. Mosley, ante,* 304, 195 S. E., 830, and cases cited.

The court had correctly stated the law in other portions of the charge. However, "it is well settled that when there are conflicting instructions upon a material point, a new trial must be granted. As the jury are not supposed to be able to determine when the judge states the law correctly and when incorrectly. . . . We must assume that in passing upon the motion for new trial the jury were influenced in coming to a verdict by that portion of the charge which was erroneous." *Edwards v. R. R.,* 132 N. C., 99, 43 S. E., 585; *S. v. Mosley, supra.*

As the case goes back for new trial for the errors treated, other exceptions upon which the defendant relies need not be considered. *S. v. Stephenson,* 212 N. C., 648, 194 S. E., 81; *S. v. Robinson, supra.*

For the reasons stated, the defendant is entitled to a

New trial.