STATE v. CHARLIE MOORE.

(Filed 4 January, 1939.)

**1. Homicide § 27f—**

When presented by the evidence, it is error for the court to fail to charge the law of self-defense in case of nonfelonious assault, and defendant's exception to a charge solely on the law of self-defense in case of a felonious assault must be sustained.

**2. Same—Charge held susceptible to construction that reasonableness of apprehension should be determined from facts as of time of trial.**

A charge on the law of self-defense that a person may use such force "only as it is necessary, or as reasonably appears to be necessary," *is held* for error as being susceptible of the construction that the reasonableness

of the apprehension to act should be determined from the facts and circumstances as they appeared at the time of trial, and not as the facts and circumstances appeared to defendant at the time of the homicide, and the charge being susceptible of such construction, it must be assumed that the jury so understood it.

**3. Criminal Law § 81d—**

When a new trial is awarded on certain exceptions, other exceptions relating to matters which may not recur on another trial need not be determined.

APPEAL by defendant from *Phillips, J.,* at May Term, 1938, of FORSYTH.

Criminal action on indictment charging defendant with the murder in the first degree of one Nathaniel Adams.

Defendant pleaded not guilty and relied upon the plea of self-defense.

At the time of the homicide defendant operated the Charlie Moore Cafe at the corner of Ogburn and 11th Streets in Winston-Salem. The main entrance to the cafe is on Ogburn Street. There is a side door into the kitchen from 11th Street. The kitchen is separated from the cafe by partition wall, in which there is a connecting doorway.

Between 9 and 10 o'clock on Sunday night, 1 May, 1938, Nathaniel Adams was shot and killed by a pistol in the hands of the defendant, at or near the said side door.

The State offered evidence tending to show: That after the deceased and Henry Wallie each drank a bottle of beer in Felder's Cafe they started on 11th Street for home, and after crossing the street went into Charlie Moore's Cafe to get a match; that at that time a little girl, Estella Rice, was in the cafe, and defendant and his daughter, Eva May Moore, were in the kitchen; that deceased asked the little girl for a match, and she replied that they had penny and nickel boxes to sell but none to give away; that then defendant came to the partition door and said: "Yes, I'm tired of you fellows out in the street running in here asking for a match—get out of here, both of you"; that they both went out to the front porch, where deceased cursed and said: "This man is a sorry man that wouldn't give a man a match," and called him a vilely vulgar name; that Henry Wallie said: "That man told us to get off of his place; let's go"; that they turned around the corner and started walking on the sidewalk down 11th Street; that defendant met them at the side door with a pistol in his hand; that deceased then went out into the street; that defendant asked, "Negro, what's that you say?"; that deceased repeated the vile name which he had applied to defendant when on the front porch; that defendant said, "You had better get on away from here before I kill you"; that deceased replied: "You have got your pistol, go ahead and shoot it"; that thereupon defendant shot once

into the ground near where deceased was standing and then a second shot into the air; that deceased was then going away from him, 50 or 60 feet from the cafe, but wheeled around and said: "You done shot at me, go ahead and kill me"; that then defendant shot a third time and deceased wheeled and fell in the street with a bullet wound in his left breast, from which he died almost instantly; and that at the time of the third shot defendant was on the ground, but went into the building, put up his pistol and "came back to the door smoking a cigar."

On the contrary, the defendant, after introducing similar testimony with respect to the deceased asking for a match and his cursing on the front porch, offered further testimony tending to show: That after deceased and Henry Wallie left the front door, a noise was heard at the back or side door and on going there the defendant saw deceased and Henry Wallie and ordered them away, but that they refused to go; that deceased continued to curse defendant, using vile and opprobrious language; that defendant went to his safe in the corner of the kitchen, got his pistol, returned to the door and shot twice in rapid succession to scare the men away; that he then returned to the safe and put up the pistol and came out into the front part of the cafe; that again hearing noise at the back or side door, defendant, followed by his daughter and the other girl, returned to the kitchen and, on seeing that deceased had the screen door open, defendant a second time went to the safe, got his pistol and went to the door; that deceased started away but Henry Wallie told him to go in there and drag out the defendant, calling him by a vulgar name, "and we will kill him. If he kills you, I will kill him"; that thereupon the deceased turned and started toward the defendant, who shot him; and that deceased was then from six to thirteen feet from the door, but fell much farther away.

Eva May Moore and Estella Rice, testifying for the defendant, stated that they saw nothing in the hands of either deceased or Henry Wallie. Defendant did not go upon the stand.

Verdict: Guilty of murder in the second degree.

Judgment: Confinement in the State's Central Prison at hard labor, to wear stripes, for a period of not less than 27 years, nor more than 30 years.

Defendant appealed to the Supreme Court and assigns error.

*Attorney-General McMullan and Assistant Attorneys-General Bruton and Wettach for the State.*

*Richmond Rucker for defendant, appellant.*

WINBORNE, J. On authority of *S. v. Bryant,* 213 N. C., 752, 197 S. E., 530, and on the factual situation appearing on this record, de-

STATE v. MOORE.

fendant's exceptions present prejudicial error in two aspects: (1) Here as there, after stating the principle of law with respect to the right of a man, who without fault himself is murderously assaulted, to stand his ground and fight in self-defense, the court charged that: "In order to have the benefit of this principle of law, the defendant must show that he was free from blame in the matter, that the assault upon him was with felonious purpose, with intent to kill or inflict bodily harm, and that he took life of the deceased only when it was necessary or apparently so to protect himself." Exception by defendant is well taken to the failure of the court, as it was its duty to do, to go further and explain the principle of law applicable in case of nonfelonious assault. The jury might have found that a felonious assault was not made, but that a nonfelonious assault was made.

(2) Here as there, under authorities there cited, the following charge is held to be erroneous: "The means of force which a person is justified in using in self-defense depends upon the circumstances of the attack and must in no case exceed the bounds of mere defense and prevention, but if the one attacked uses such means of force only as it is necessary, or as reasonably appears to be necessary to repel the attack and save himself from death or great bodily harm, and the death of his assailant ensues, it is justifiable and excusable homicide."

In *S. v. Bryant, supra,* it is stated that the error is in the clause "as reasonably appears to be necessary." The reasonableness of the apprehension of necessity to act, and the amount of force required, must be judged by the jury upon the facts and circumstances *as they appeared to the defendant at the time* of the killing. The charge being in the present tense might have been understood by the jury to mean as the facts and circumstances appeared at the time of the trial, and being susceptible of that construction it is assumed that the jury so understood.

The authorities on both questions are quoted and cited in *S. v. Bryant, supra.*

It is fair to the learned judge, who tried this as well as the *Bryant case, supra,* to say that the opinion in the *Bryant case, supra,* was handed down after the charge in this case was delivered.

Other exceptions may have merit in them, but as the errors assigned may not recur on another trial, we deem it unnecessary to discuss them here.

Let there be a

New trial.