## STATE v. CECIL CHURCH.

(Filed 7 January, 1949.)

**1. Criminal Law § 40d—**

Where defendant goes upon the stand and admits certain acts of misconduct and then introduces evidence of good character, the State has the right to cross-examine such character witnesses regarding the admitted acts of misconduct for the purpose of attacking the credibility of such character witnesses.

**2. Criminal Law § 48c—**

Where evidence is competent for a restricted purpose and no request is made that its admission be limited thereto, a general objection to the evidence cannot be sustained.

**3. Criminal Law § 78e (2)—**

Any misstatement in stating the contentions of the State must be brought to the court's attention in time to afford opportunity for correction in order for objection thereto to be sustained on appeal.

**4. Homicide § 20—**

The evidence in this case *is held* sufficient to support the view that defendant, being armed, and his father and two brothers, acted in concert in going to deceased's home and with vile language ordering him out, in stubborn pursuit of the controversy between them.

**5. Homicide § 27f—**

Ordinarily, a charge on the question of self-defense which is predicated solely upon a murderous assault, is erroneous, since a defendant has the right to defend himself or a member of his family against a non-felonious assault and to fight in defense of himself or a member of his family if he has reasonable grounds to believe that he or a member of his family is about to be killed or receive great bodily harm.

**6. Same: Homicide § 30—Charge on right to defend member of family held not prejudicial when construed contextually in light of evidence.**

The evidence tended to show that defendant and members of his family pursued an altercation originally started by deceased by going to the home of deceased and with vile language ordering him out, and that when deceased came out of the house and started pursuing defendant's brother, defendant shot and killed him. *Held:* An instruction on the right of self-defense predicated solely upon a murderous assault on defendant's brother cannot be held for prejudicial error since under the evidence defendant was the aggressor immediately prior to the fatal shooting and therefore the right of self-defense was not available to him, and the charge considered contextually in the light of the evidence is not prejudicial to defendant in this aspect.

**7. Homicide § 11—**

The right of self-defense is not available to one who invites another to engage in a fight, unless he first abandons and withdraws from the fight and gives notice to his adversary that he has done so.

APPEAL by defendant from *Clement, J.,* at August Term, 1948, of WILKES.

Criminal prosecution tried upon indictment charging the defendant with the murder of one Douglas Norris.

The defendant was not placed on trial for murder in the first degree, but for murder in the second degree or manslaughter, as the evidence might warrant.

The State's evidence tends to show the following facts: The defendant, Cecil Church, lived with his father, Jim Church, next door to his sister and brother-in-law, Douglas Norris. A garden belonging to the defendant's father separated the two houses. Douglas Norris will be referred to hereinafter as "the deceased." On Sunday afternoon, 6 June, 1948, the deceased, the defendant, Charles Osborne and others, went fishing. They drank some liquor and went to Williams' Cafe on Highway 421, near the town of North Wilkesboro. At the cafe a difficulty arose between the deceased and Charles Osborne. The defendant attempted to settle the difference between the two men and the deceased slapped the defendant. The defendant left the cafe in his pick-up truck. Shortly thereafter he returned with his father, Jim Church, in the pick-up truck and the defendant's brother, Herbert Church, and his wife drove up in a car. Jim Church, with rifle in hand, and the defendant got out of the pick-up truck and walked within a few feet of the deceased. There is some evidence which tends to show that the deceased was marched to his home by the defendant and his father at the point of the rifle. The evidence further tends to show that when the deceased and Cecil Church reached their respective homes they renewed their quarrel. Thereafter Cecil Church went into his house and got a rifle and the deceased backed away from him with his hands up and went into his own home. About this time the father of the defendant and Herman Church drove up in the pick-up truck and parked it in the road near Norris' home. Then Cecil Church and his father and brothers, Herman and Dillard Church, went near the Norris house and Cecil, with rifle in hand, put his foot on Norris' porch and called him a "s.o.b. coward," and told him to come out. The deceased did not come out immediately, but upon Dillard Church repeating the oath the deceased ran out of his house toward Dillard and while they were running around the pick-up truck Cecil Church shot the deceased and killed him. Several State's witnesses testified that the only weapon seen at the time of the killing was the rifle in the hands of the defendant.

The defendant offered evidence tending to show that just prior to the fatal shooting the deceased had stated he was going in his house and get his .45 and kill the last d——n one of the Churches; that when he came out of his house, he had his right hand in his hip pocket, he jumped off the porch and struck at the defendant's neck with a knife and then made

STATE v. CHURCH.

for Dillard Church. Dillard ran around the pick-up truck with the deceased striking at him, and as Dillard Church came around the end of the truck the deceased swerved and struck at the defendant. The defendant fired one shot, but the deceased kept on running Dillard around the truck. The next time he came around, the deceased again struck at defendant, who fired a second shot.

Verdict: Guilty of manslaughter. Judgment: Imprisonment in the Central Prison at Raleigh for a term of not less than eight nor more than twelve years.

Defendant appeals, and assigns error.

*Attorney-General McMullan and Assistant Attorneys-General Bruton, Rhodes, and Moody for the State.*

*Trivette, Holshouser & Mitchell for defendant.*

DENNY, J. The defendant assigns as error the ruling of the court below in permitting the State, over the objection of the defendant, to cross-examine one of defendant's character witnesses regarding specific acts of the defendant.

Ordinarily where a defendant introduces evidence of his good character it is error to permit the State to cross-examine the character witness as to particular acts of misconduct on the part of the defendant. Neither is it permissible for the State to introduce other evidence of such misconduct. Under such circumstances, however, the State is permitted to introduce evidence of the defendant's bad character. *S. v. Robinson,* 226 N. C. 95, 36 S. E. (2) 655; *S. v. Shepherd,* 220 N. C. 377, 17 S. E. (2) 469; *S. v. Lee,* 211 N. C. 326, 190 S. E. 234; *S. v. Nance,* 195 N. C. 47, 141 S. E. 468; *S. v. Adams,* 193 N. C. 581, 137 S. E. 657; *S. v. Holly,* 155 N. C. 485, 71 S. E. 450.

The above rule is subject to certain exceptions, among them being where a defendant goes upon the stand and admits certain specific acts of misconduct, as the defendant did in the trial below, and then introduces evidence of his good character, the State has the right to cross-examine such character witness regarding the admitted acts of misconduct in order to ascertain his conception of what constitutes good character. *S. v. Quick,* 150 N. C. 820, 64 S. E. 168; *S. v. Killian,* 173 N. C. 792, 92 S. E. 499; *S. v. Nance, supra.* Also, as *Barnhill, J.,* said in speaking for the Court in *S. v. Shepherd, supra:* "Such evidence is competent for the purpose of testing the knowledge of the witness concerning the general reputation about which he has testified and to impeach his testimony. That is, it goes to the credibility of the witness and is competent for that purpose only . . . Upon request the court should so limit it. However, upon general objection only, without request that it be restricted to the

use for which it is competent, the general objection and exception is not tenable. *S. v. Tuttle,* 207 N. C. 649, 178 S. E. 76, and cases cited; *S. v. Hawkins,* 214 N. C. 326, 199 S. E. 284."

The exceptions upon which this assignment of error is based are without merit.

The defendant brings forward a number of assignments of error based on exceptions to the manner in which the trial judge stated the contentions of the State in his charge to the jury. He insists it was prejudicial error for the court to charge the jury that the State contends that the Churches were mad, that they went to the home of the deceased for the purpose of killing him, with malice in their hearts, because he had assaulted the defendant. Since the court's attention was not called to any misstatement of facts or omissions in giving the State's contentions, in time to afford an opportunity for correction, these assignments of error will not be upheld. *S. v. Britt,* 225 N. C. 364, 34 S. E. (2) 408; *S. v. Smith,* 225 N. C. 78, 33 S. E. (2) 472; *Mfg. Co. v. R. R.,* 222 N. C. 330, 23 S. E. (2) 32; *S. v. Johnson,* 219 N. C. 757, 14 S. E. (2) 792; *S. v. Wagstaff,* 219 N. C. 15, 12 S. E. (2) 657. Moreover, the evidence on this record is sufficient to support the view that the defendant, his father and two brothers, were acting in concert at the time the deceased was killed. *S. v. Riddle.* 228 N. C. 251, 45 S. E. (2) 366.

The defendant also sets out eleven assignments of error based on exceptions to the court's charge on the right of self-defense. Among these he assigns as error the following portion of the charge: "If a murderous assault was being made on a member of his family, he had the same right to fight in defense of their life as he would in defense of his own." The defendant insists that the limitation upon the right to fight in defense of his family to a "murderous assault" was prejudicial, inasmuch as he would also have a right to fight in their defense in the case of a non-felonious assault, citing *S. v. Bryant,* 213 N. C. 752, 197 S. E. 530. The defendant also contends the charge should have gone further and included an instruction to the effect that the defendant would likewise have the right to fight in defense of a member of his family to prevent their receiving great bodily harm, citing *S. v. Mosley,* 213 N. C. 304, 195 S. E. 830.

We concede that an instruction on the right of self-defense predicated solely upon a felonious assault and omitting to charge as to the defendant's right to defend himself or a member of his family against a non-felonious assault is ordinarily erroneous. *S. v. Minton,* 228 N. C. 15, 44 S. E. (2) 346; *S. v. Bryant, supra.* Likewise, one may fight in defense of himself or a member of his family if he has reasonable grounds to believe that he or a member of his family is about to be killed or to receive great bodily harm. *S. v. Mosley, supra; S. v. Anderson,* 222 N. C.

148, 22 S. E. (2) 271.  However, we think the charge, when considered contextually, is not erroneous in this respect.

Moreover, the cases cited by the appellant and similar decisions are predicated upon facts which warranted the submission of the plea of self-defense to the jury.  But according to this record, after the deceased had forbidden the defendant and other members of his family to come on his premises, and after the defendant had caused the deceased to back into his own home at the point of a rifle; the defendant, accompanied by his father and two brothers went on the premises of the deceased and the defendant cursed him and ordered him to come out of his home.  He did not come out and Dillard Church, brother of the defendant, called the deceased a coward and a s.o.b., whereupon the deceased ran out of the house and jumped off the porch.  And according to the evidence of the State, while the deceased ran after Dillard Church he did not stirke at him with a knife nor did he attempt to assault the defendant, but, on the contrary, Dillard Church while running around the pick-up truck was hollering "shoot him, shoot him."  According to the uncontradicted evidence on this record, the defendant and his father and two brothers were the aggressors just prior to the fatal shooting, demanding a continuance of the quarrel up to the moment the deceased came out of his house in response to the vile and abusive language of the defendant and his brother Dillard.

The right of self-defense is not available to one who invites another to engage in a fight, unless he first abandons the fight and withdraws from it, and gives notice to his adversary he has done so.  *S. v. DeMai,* 227 N. C. 657, 44 S. E. (2) 218; *S. v. Davis,* 225 N. C. 117, 33 S. E. (2) 623; *S. v. Robinson,* 213 N. C. 273, 195 S. E. 824; *S. v. Kennedy,* 169 N. C. 326, 85 S. E. 42; *S. v. Garland,* 138 N. C. 675, 50 S. E. 853; 40 C. J. S., Homicide, Sec. 92, p. 954.

It is true the deceased started the controversy, but the defendant stubbornly pursued it, and at the time of the fatal shooting he had not indicated any desire or intention to withdraw from it, but, on the contrary, armed with a deadly weapon, and while under the influence of liquor, he brought a family quarrel to a tragic end.  It would seem the jury gave him every consideration he could expect on this record.

We have carefully considered all the numerous exceptions and assignments of error brought forward in the appellant's brief and while they have been presented with commendable zeal and diligence by his counsel, such prejudicial error as would warrant a new trial has not been shown.

No error.